LERCH et al., Appellants, *v.* MISSOULA BRICK & TILE
CO., Respondent.

(No. 3,095.)

(Submitted March 15, 1912.   Decided March 29, 1912.)

[123 Pac. 25.]

*Leases—Agricultural Lands—Limitation of Term—Statutory Construction.*

Statutes—Construction—Intention of Legislature.
   1.   In construing a statute the intention of the legislature is to be pursued, if possible, and to ascertain the reason and meaning of particular provisions, courts may recur to the history of the times and the cause or necessity influencing the passage of the Act.

Leases—Agricultural Lands—Limitation of Term.
   2.   *Held,* that Revised Codes, section 4465, providing that no lease or grant of agricultural land for a longer period than ten years, in which shall be reserved any rent or service of any kind, shall be valid, is a limitation only upon the right to lease such land for agricultural purposes, and does not limit the term for which such land may be leased for purposes other than agricultural.

Same—Purpose of Lease—Limitation of Use.
   3.   If a fair interpretation of a lease as written discloses that the use of the land by the lessee is strictly limited to other than agricultural purposes, the lease is not invalid though its term exceeds the limit prescribed by Revised Codes, section 4465, and it is not necessary that it contain an express provision in terms limiting such use.

Same.
   4.   A contract by which a land owner leased to a brick and tile manufacturing company certain lands and granted to it the right to take within the boundaries described "all clay, earth and other material necessary for use in and about its business of manufacturing brick, tile, *etc.,*" was, in effect, a sale of so much of the soil as might become necessary, from time to time, for the purpose of manufacturing brick and tile, and a lease of sufficient surface ground within the limits described to carry on its operations; and prohibited the lessee from using any portion of the ground for agricultural purposes.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

Action by Anton Lerch and another against the Missoula Brick and Tile Company. From a judgment for defendant rendered on sustaining a general demurrer to the complaint, plaintiffs appeal. Affirmed.

*Mr. William F. Wayne,* for Appellants, submitted a brief, and submitted oral argument.

"In construing a statute effect must, if possible, be given to all its language, *i. e.,* to every word." (*State* v. *Cave,* 20 Mont. 468, 52 Pac. 200; *Home B. & L. Assn.* v. *Nolan,* 21 Mont. 207, 53 Pac. 738; *State* v. *Montello Salt Co.,* 34 Utah, 458, 98 Pac. 549.) With the wisdom, policy or expediency of a statute the judiciary has no concern whatever. (*Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *Monson* v. *Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Bussells* v. *Gill,* 58 Wash. 468, 137 Am. St. Rep. 1070, 108 Pac. 1080.)   The word "no" as used in section 4465, Revised Codes, means, not any; not one; none; it is a word of negation and exclusion. (*Ex parte Hunter,* 2 W. Va. 122; *Parks* v. *State,* 100 Ala. 634, 13 South. 756; *Perkins* v. *Franklin,* 38 Mass. 483.)

Where the words of a statute are plain, ordinary, unambiguous words, they must be given their plain, natural, and ordinary signification, and the statute held to mean what it plainly expresses, there being in such case no room for construction or interpretation. (36 Cyc. 114; *State* v. *Livingston Concrete Co.,* 34 Mont. 570, 9 Ann. Cas. 204, 87 Pac. 980; *State* v. *Johnson,* 20 Mont. 367, 51 Pac. 820.)   The prohibition of long-time leases of agricultural land had its origin in the New York Constitution of 1846, Article I, section 14 of which is identical with our section 4465, except that the term for which leases may be made is limited to twelve years instead of ten.   Three times only has the New York court of appeals had occasion to consider the specific question of what leases are included in the prohibition. (See *Odell* v. *Durant,* 62 N. Y. 524; *Clark* v. *Barnes,* 76 N. Y. 301, 32 Am. Rep. 306; *Massachusetts Nat. Bank* v. *Shinn,* 163 N. Y. 360, 57 N. E. 611.)

It must be admitted that the court in the latter part of the opinion in the last case cited expresses the view that the leases sought to be limited as to term are only those "for agricultural purposes."   Our response to this suggestion is: (1) The lease in question was of certain iron ore, with incident rights

to mine and remove it. The court had already decided that "it was not a lease of agricultural lands, for agricultural purposes, but of mineral lands for mining purposes." The suggestion, therefore, that the limitation of the constitutional provision was only upon leases "for agricultural purposes" was purely *dictum.* It cannot, therefore, be regarded as overruling the case of *Odell* v. *Durant, supra,* which expressly held that "the character of the land is made by the Constitution the test of the validity of the lease; not the purpose for which the lease was made." (2) Even this portion of the opinion holds that to escape invalidity on the theory that the limitation is only upon leases "for agricultural purposes" there must be an express exclusion of use for agricultural purposes, the court saying: "Hence the purpose is no test of validity, for the lease, whatever its purpose, if it covers agricultural lands, *must exclude that use or it will be void,* provided the term exceeds twelve years." In the lease here being attacked by appellants, there is no exclusion of use by the lessee for agricultural purposes. Therefore, even under the view expressed in the *dicta* above referred to, taken in the light most favorable to the contention of respondent in the court below, this lease cannot withstand the attack.

In behalf of Respondent, *Mr. Frank A. Roberts* submitted a brief and argued the cause orally.

One of the leading rules of statutory construction is that the spirit or reason of the law will prevail over its letter. The meaning of general terms may be restrained by the spirit or reason of the statute, and that general language may be construed to admit implied exceptions. (*Rector of Holy Trinity Church* v. *United States,* 143 U. S. 457, 36 L. Ed. 226, 12 Sup. Ct. Rep. 511; *People* v. *Lacombe,* 99 N. Y. 43, 49, 1 N. E. 599; *New Orleans R. R. Co.* v. *Hemphill,* 35 Miss. 17; *Town of Ryegate* v. *Wordsboro,* 30 Vt. 746; *Gilkey* v. *Cook,* 60 Wis. 133, 18 N. W. 639.) A statute is to be so construed as to carry out the intent of the legislature, though such construction may be

contrary to the letter of the statute.    (*Wilkinson* v. *Leland,* 27
U. S. (2 Pet.) 627, 7 L. Ed. 542; *Erwin* v. *Moore,* 15 Ga. 361;
*Perry County* v. *Jefferson County,* 94 Ill. 214; *Bailey* v. *Com-
monwealth,* 74 Ky. (11 Bush) 688; *Cox* v. *Williams,* 5 Mart.,
n. s., (La.) 141; *Somerset* v. *Dighton,* 12 Mass. 383; *Grimes* v.
*Brync,* 2 Minn. 89 (Gil. 72) ; *Ingraham* v. *Speed,* 30 Miss. 410.)

Another long and well-established rule of construction is that
every statute must be construed with reference to the object
intended to be accomplished by it; and in order to ascertain this
object, it is most proper to consider the occasion and necessity
of its enactment, the evils to be suppressed and the benefits to
be secured; and when this is done, then the statute should receive
such construction as will best advance the object of its passage.
(*United States* v. *Union Pacific R. R. Co.,* 91 U. S. 72, 23 L. Ed.
224; *City of Evansville* v. *Summers,* 108 Ind. 189, 9 N. E. 81;
*Commercial Bank* v. *Foster,* 5 La. Ann. 516; *Keith* v. *Quinney,* 1
Or. 364.)

It plainly appears from the provisions of the lease that the
only right granted by the lease was the right to mine such
clay and minerals as could be made· into brick and kindred
products, while, on the other hand, all agricultural rights were
specially reserved to the lessors.    The first New York case cited
by counsel for appellants is directly in point in sustaining our
first proposition, *viz.,* that where agricultural rights are re-
served, then the lease is not a lease within the statutory pro-
hibition.    The lease in the case which was then being considered
by the New York court did not reserve to the lessors the agri-
cultural rights, and for the failure so to do, the court held the
lease to be invalid.

The second case cited is that of *Clark* v. *Barnes,* 76 N. Y. 301,
32 Am. Rep. 306.    This case does not reach the main point
of the case, but simply holds as to our second proposition, that
the lease would be invalid only for the excess over the statutory
limit.    The last case supports our contention.

The theory of the convention which adopted the original
constitutional provision, from which the section of our Code

now in question was copied, was that the leases of agricultural lands for agricultural purposes were detrimental to the interests of agriculture, and that such leases should be prohibited, and that this was the true meaning and purpose of the provision; that the evil aimed at by the convention was the leasing of agricultural lands for agricultural purposes, *viz.*, manorial leases, for long periods of time, but that it was not intended to prohibit the leasing of a part of a suburban farm for the erection of manufactories; or of a mine with a right to remove mineral products therefrom, even though the process of mining should necessarily interfere, to some extent, with the tilling of the soil. Such interference is merely incidental, and does not convert such a lease into a farm lease.

MR. JUSTICE SMITH delivered the opinion of the court.

On the thirtieth day of November, 1909, the parties hereto entered into a written contract, wherein the plaintiffs leased to the defendant a tract of land in Missoula county for a term of ninety-nine years, at an annual rental of $300. It appears from the lease that the lands so let are part of a larger tract owned by the plaintiffs. We quote certain portions of the agreement: "The lessors agree that the lessee may take within the boundaries of the land described all such clay, earth, and other material as it shall desire for the purpose of using the same in, about, or in connection with its business in manufacturing brick, tile, *etc.*, and such other purposes as to it shall seem proper. * * * If the said lessee shall damage any of the trees in the orchard of the lessors, or other fruit or berry-bearing trees or shrubbery or shade trees, a reasonable compensation is to be made therefor. * * * The lessee may build * * * tracks and wagon road any place on the premises hereby leased * * * for the purpose of moving clay, fuel, or other material. * * * The lessee covenants that it will so far as the operations of the lessee are concerned protect all irrigating ditches of the lessors and maintain the same in condition necessary to enable the same to carry water in the usual quantities.

* * * The lessee may construct buildings, brick kilns, and any and all other structures and apparatus that it may deem necessary for its use in connection with its business of manufacturing brick, tile, *etc.*, upon the said premises. * * * Until such time as the lessee shall require for its use the lands and premises hereby leased and let, the lessors shall have the privilege to occupy and use the same or any portion thereof as they have heretofore done. * * * It is further agreed that the lessee will not excavate upon or in any manner disturb the surface conditions of that portion of the land covered by this lease which is meadow and grazing land until such time as the doing so may become actually necessary in the successful and proper operation and conduct of the business by said lessee contemplated, and until the same shall become necessary the lessors are to have the right to use the said meadow and grazing land and to cut, take, and use the crops of hay grown thereon the same as if this lease had not been given. * * * The lessee is to provide * * * a practicable way for (lessors') stock to go to and from the barnyard and corral to the grazing lands.'' This action was brought to annul the lease, plaintiffs alleging in their complaint that ''the land covered by said lease is agricultural land, and the lease is therefore invalid under the provisions of section 4465, Revised Codes, as an attempt to lease agricultural lands for a longer period than ten years.''  A copy of the lease was attached to the complaint.  The district court of Missoula county sustained a general demurrer to the complaint, and, plaintiffs declining to amend, judgment was entered for the defendant.  From the judgment an appeal has been taken.

Section 4465, Revised Codes, reads as follows: ''No lease or grant of agricultural land for a longer period than ten years, in which shall be reserved any rent or service of any kind, shall be valid.''

We encounter no difficulty in adopting all of the rules of statutory construction contended for by counsel for the appellants.  In the construction of a statute the intention of the

[1]   legislature is to be pursued, if possible. (Rev. Codes, sec. 7876; 36 Cyc. 1102.) "Courts may with propriety, in construing a statute, recur to the history of the time when it was passed, and this is frequently necessary in order to ascertain the reason as well as the meaning of particular provisions in it." (*United States* v. *Union Pac. R. R. Co.*, 91 U. S. 72, 23 L. Ed. 224.) The New York court of appeals in *Tonnele* v. *Hall*, 4 N. Y. 140, said: "It is a sound principle that such a construction ought to be put upon a statute as may best answer the intention which the makers had in view, and that is sometimes to be collected from the cause or necessity of making it, at other times from other circumstances. Whenever the intention can be discovered, it ought to be followed with reason and discretion in its construction, although such construction may seem contrary to its letter." (See, also, *City of Evansville* v. *Summers*, 108 Ind. 189, 9 N. E. 81; *Commercial Bank* v. *Foster*, 5 La. Ann. 516; *State ex rel. Meinzer* v. *Diveling*, 66 Mo. 375; *Keith* v. *Quinney*, 1 Or. 364.) With this end in view, we may inquire the reason why this particular statute was enacted. New York appears to have been its parent state. As we find substantially the same statute there, prior to its adoption here, it may be presumed that [2]   we adopted it, perhaps indirectly *via* California, from that state, together with the construction placed upon it there by the courts. (*In re Wisner*, 36 Mont. 298, 92 Pac. 958.) The statute has been construed several times in New York.

In *Stephens* v. *Reynolds*, 6 N. Y. 454, Mr. Justice Gridley, speaking for the court, said: "A large part of the manorial lands in this state were originally settled under leases in fee, leases for lives, or a long term of years. In other words, the proprietors, instead of selling their lands out and out to purchasers, demised them to tenants, for long periods of time, reserving an annual rent, in money, produce, or services. Experience proved that this mode of settling the country was prejudicial to the prosperity and interests of the state as a question of political economy. The proprietors owning the lands, and the tenants having only the usufructuary interest, subject to be

lost by forfeiture, by a nonperformance of any of the conditions of the lease, the latter felt none of the pride of independent ownership, and no desire to improve, by the best mode of cultivation, an inheritance which was liable to pass from them, or their descendants without a compensation.  Impressed with the conviction of this truth, the framers of the Constitution of 1846, by a provision in the fundamental law, abrogated these tenures, and provided that no lease or grant of agricultural land for a longer period than twelve years thereafter made in which should be reserved any rent or service of any kind should be valid.''

In *Parsell* v. *Stryker*, 41 N. Y. 480, Mr. Justice James said, for the court: ''That clause of the Constitution, as all know, was * * * aimed * * * against manorial leases.''

In *Odell* v. *Durant*, 62 N. Y. 524, the court said: ''The character of the land is made by the Constitution the test of the validity of the lease, not the purpose for which the lease was made.  There was nothing in this lease which precluded the lessee from using the land * * * for agricultural purposes if he saw fit.  The plaintiff admits that the demised premises consisted in part of agricultural land, and the lease, being for more than twelve years, was clearly invalid as to that land. * * * The right to take ore may have been entirely worthless, and the whole value of the premises may have consisted in the use for agriculture, even though that may not have been the purpose for which the premises were in fact leased; still, being agricultural lands and there being no restriction in the lease as to their use, the constitutional prohibition applies.  If all that was intended to be demised was the mining right, the lease should have been put in that form and it would have been free from objection.''

In *Clark* v. *Barnes*, 76 N. Y. 301, 32 Am. Rep. 306, Mr. Justice Earl, speaking of the constitutional provision, said: ''This provision condemns all leases for a longer period than twelve years.''

45 Mont.—21

These cases were all decided before the adoption of our Code provision, but, as the holding of the New York court since that date has been in accord with the earlier decisions, we may with propriety examine that also.

In *Massachusetts Nat. Bank* v. *Shinn,* 163 N. Y. 360, 57 N. E. 611, the court said: "We think that this lease does not come within the spirit of the constitutional prohibition, because the property leased was an iron mine extending for an unknown distance under agricultural lands, and was to be used exclusively for mining purposes. The right granted was to mine and carry away ore found under the surface of the ground, and, as incidental thereto, the further right to erect such structures and build such roads as were necessary for the primary object of mining. The lands not needed for this purpose were to be used by the lessor for agricultural purposes. There was to be no interference with the farming operations of the lessor, except as required by the mining operations of the lessee, who was made the sole judge of the necessity and extent thereof. It was not a lease of agricultural lands for agricultural purposes, but of mineral lands for mining purposes. The lessee had no right to cultivate the land, for he could simply mine and ship ore. The pursuit of agriculture was prohibited by the express covenant of the lessee to permit no business to be done upon the premises 'other than the business of mining.' The evil aimed at by the Constitution is long leases of farming lands for farming purposes, not the leasing of a part of a suburban farm for the erection of dwelling-houses, stores, or manufactories, or of a mine in the bowels of the earth, with the right to bring ore to the surface and ship it. Even if the process of mining necessarily interferes to some extent with the tilling of the soil above the mine, it is merely incidental, and does not convert a mine lease into a farm lease. * * * While the purpose of a lease may be to mine ores, if there is no restriction to that use, the land may be used as a farm, and the Constitution thus violated. Hence the purpose is no test of validity, for the lease, whatever its purpose, if it covers agricultural lands, must exclude that

use, or it will be void, provided the term exceeds twelve years. If that use is prohibited, the lease is not of a farm to be used as a farm, which the history of the times shows was the particular mischief aimed at in adopting the provision in question. The theory of the convention * * * was that long leases of agricultural lands for agricultural purposes were detrimental to the interests of agriculture."

Having ascertained the reason for the adoption of the measure, as above indicated, we may proceed to examine the provisions of the lease involved in this case. Before doing so, however, it is to be remarked that counsel for the appellants contend that that portion of the opinion in *Massachusetts Nat. Bank* v. *Shinn,* which holds that the limitation of the constitutional provisions applies only to leases "for agricultural purposes," is *obiter dictum.* But we do not so regard it. It seems to us that that case and *Odell* v. *Durant, supra,* are in accord. The expression found in the latter case that "the character of the land is the test of the validity of the lease, not the purpose for which the lease is made," is quoted in the *Massachusetts Bank Case,* and explained to mean that the purpose of a lease of agricultural land is immaterial so long as the lands may be used for agricultural purposes.

Again it is contended that, in order that the lease be valid, there must be an express prohibition of use for agricultural purposes, and the *Massachusetts Bank Case* is cited as authority for the contention. If by this is meant that the lease must contain an express provision, in terms, that the lessee may not use the land for agricultural purposes we cannot agree with counsel. If the terms of the lease disclose that the land may not be used for agricultural purposes by the lessee, and do not permit the use of the land by him for such purposes, we think it can be upheld as a valid lease by authority of both *Odell* v. *Durant, supra,* and *Massachusetts Nat. Bank* v. *Shinn, supra.* In other words, [3] if a fair interpretation of the lease as written discloses the fact that the right of the lessee to use the land was strictly limited to other than agricultural purposes, then the lease is not

invalid. When a lease of land is made ostensibly for purposes other than agricultural and the land so leased cannot by the terms of the lease, either express or implied, be put to agricultural uses by the lessee, the purpose of the statute has been satisfied, and the land in effect ceases to be agricultural land within the meaning of the law, although susceptible of use for agricultural purposes. ·

In this particular lease the parties first described a tract [4] within the boundaries of which the operations of the lessee were to be confined under any circumstances. They then provided that the lessee might take within such boundaries all clay, earth, and other material necessary for use in and about its business of manufacturing brick, tile, *etc.*, "and such other purposes as it shall deem proper." This latter expression must be construed to mean such other purposes as are germane to the business of manufacturing brick and tile. It is very 'clear that the entire tract was not to be used by the lessee without restriction. Indeed, the phraseology employed leads to the conclusion that the land was not leased for the purpose of being cultivated, or for grazing or raising hay, or for any other purpose which would leave it intact, but that such portions thereof as were suitable should be severed and manufactured into brick, tile, *etc.*, and thereafter removed permanently from the locality. It was necessary, of course, in order to carry forward the main purpose, that provision should be made whereby portions of the land might be occupied for buildings, brick kilns, and roads, but this use was merely incidental to the other. If the lessee caused any loss or damage to fruit trees, shade trees, berry bushes, or other shrubbery, it was to make compensation therefor. It was also to protect and maintain all irrigating ditches of the lessors. It was then clearly stipulated that, until the lessee required the land for the purpose of making brick and tile, the lessors should have the privilege of occupying and using the same "as they have heretofore done." If, as alleged in the complaint, the land is agricultural in character, it is not an unreasonable conclusion that the lessors used it for agri-

cultural purposes; and, if the privilege of so using it was reserved until such time as the lessee desired to use it for manufacturing purposes, the latter was necessarily prohibited from using it for agricultural purposes. This idea is further strengthened by other parts of the lease, wherein the right to use the meadow, grazing, and hay lands is expressly reserved by the lessors until the manufacturing operations of the lessee make it necessary to "excavate upon" or disturb the surface thereof. We are clearly of opinion that the contract between the parties amounted in effect to a sale of so much of the soil as might become necessary from time to time for the purpose of manufacturing brick and tile, and a lease of sufficient surface ground, within the limits described, to carry on its operations, and no more; and that the lessee is, partly by express agreement and partly by necessary implication, prohibited from using any portion of the ground for agricultural purposes. While a section of the California Code, identical with our section 4465, *supra,* has been amended since its adoption here so as to read "no lease of land for agricultural purposes," instead of "no lease of agricultural land," we regard the amendment as simply an attempt to more clearly define the original intention of the legislature, and to make the statute clearly set forth the theory of its purpose as shown by the decisions of the court of appeals of New York.

Our attention is called to the fact that section 4466, Revised Codes, declares that no lease or grant of any town or city lot for a longer period than twenty-five years, in which shall be reserved any rent or service of any kind, shall be valid; but we do not regard this section as having any bearing or throwing any light upon the preceding one. It applies to all city and town lots, as such, whereas section 4465 refers to but one kind of lands, to wit, agricultural lands. The status of a town or city lot is fixed by the confines of the municipality, while the term "agricultural lands" is descriptive of the nature of the land itself. It does not necessarily mean acre property. It is

not possible to misunderstand the meaning of the words "city lot." They mean a lot within the limits of a city, regardless of its óther characteristics.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Reheáring denied April 17, 1912.

