Quinten **FIEBIGER** and Elmo Fiebiger, Plaintiffs and Appellants,

v.

Robert **FISCHER**, Lavonne Fischer, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants and Appellees.

Civ. No. 9551.

Supreme Court of North Dakota.

March 1, 1979.

Robert B. Baird, Dickinson, and Floyd B. Sperry, Bismarck, for plaintiffs and appellants; argued by Robert B. Baird, Dickinson.

Dale W. Moench, Dickinson, for defendants and appellees.

PEDERSON, Justice.

This is an appeal from a judgment entered by the district court in a case de-

nominated an "action to determine adverse claims" (Chapter 32–17, NDCC), that involved an attempt to cancel a land contract.[1] The notice of appeal recites in part that "plaintiffs . . . appeal from the decision, orders and judgment . . . and particularly from the Judgment dated June 5th, 1978, with the Findings, Conclusions and Orders therefor . . . ."[2] The district court held, among other things, that a valid lease and option existed between the parties and that the option had been effectually exercised to convey the property. We affirm the judgment.

In April 1972, Quinten and Elmo Fiebiger (landlords) leased their Dunn County ranch to Robert and Lavonne Fischer (tenants) for five years at an annual rental of $9600.00.[3] The comprehensive lease document was prepared by landlords' lawyer and contained provisions for rental payments; annual continuation after the five-year period; payment of taxes; husband-like practices; upkeep of improvements; additional improvements by tenants with approval of landlords; entry and inspection by landlords; prohibition against subletting; reservation of coal mining rights during the lease period; and a very detailed option granting to the tenants a right to purchase the ranch at the price of $144,000 on a contract for deed.

The option specified that should tenants elect to exercise their option, they shall signify such election by written notice "served upon LANDLORDS not less than six months prior to the termination date of this lease." All notices were required to be made at the office of the Fiebigers' attorney in Watford City.

During the course of the rental period, the Fiebigers made several visits to the ranch but made no objections to the farming practices nor to the alterations of improvements by the Fischers. They accepted all rental payments without reservation, including a payment made subsequent to the commencement of this suit.

On March 24, 1976, the Fischers, in writing to the Fiebigers in care of their Watford City attorney, stated:

"The purpose of this letter is to notify you of our election to exercise the option to enter into a Contract for Deed with you for the purchase of the above described property as is contained in the Lease between us on the captioned premises, entered into on the 25th day of April, 1972."

In the fall of 1976, at the Fischers' request, current abstracts of title were furnished to the Fischers' counsel by the Fiebigers for examination.

Thereafter, in January 1977, the Fiebigers, for the first time, claimed violations of the lease and apparently gave tenants a Notice to Quit and a Notice of Termination of Lease.[4] Also, in January 1977, the Fiebigers brought this action to quiet title. In an answer to the complaint, the Fischers allege the existence of the lease-option agreement, the exercise of the option, and the wrongful failure of the Fiebigers to convey as required by the agreement. In a counterclaim the Fischers allege that they have been damaged by the actions of the Fiebigers.

1. "The right to terminate a vendee's rights under a land contract by an action to quiet title has long been recognized by our courts." Leahy, *Cancellation of Land Contracts*, 32 N.D.L.Rev. 5, 11 (1956). See also *Daniel v. Hamilton*, 61 N.W.2d 281 (N.D.1953).

2. Surplusage in the notice of appeal will be ignored. As we said in *Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114 (N.D.1978), when there is an appeal from a judgment even nonappealable orders are reviewable if the order and facts essential to review are embodied in the record on appeal. See also *Vasichek v.*

*Thorsen*, 271 N.W.2d 555 (N.D.1978), and *Davis v. Davis*, 268 N.W.2d 769 (N.D.1978).

3. From the deposition of Quinten Fiebiger we learn that the principal motive for the transaction was the sale of the ranch—that the five-year lease was "a chance for him [Fischer] . . . to get established," it being originally intended that the rental payments would be applied to the purchase price. That was not a part of the final agreement.

4. Copies of these two notices do not appear in the record.

The Fiebigers' response to the counterclaim denies the existence of an agreement with Lavonne Fischer and claims that the agreement with Robert Fischer was breached by him, apparently because of waste committed on the property. The Fiebigers also claimed that they are entitled to recover damages from the Fischers.[5] In an amended answer, the Fischers charge bad faith on the part of the Fiebigers in attempting to avoid the sale; that the Fiebigers are guilty of laches and have waived any alleged breach of the contract; and that they are estopped thereby from claiming or enforcing any breach, or terminating the agreement, or bringing this action. The Fischers pray for a judgment requiring specific performance of the contract, in addition to a prayer for damages and costs. A reply to the amended answer and counterclaim alleges the breach of the agreement by waste committed on the property, subleasing in violation of the terms of the agreement, and lack of adequate consideration, amounting to constructive fraud. The Fischers moved to strike this reply but the record fails to disclose any action by the trial court on this motion.

The Fischers subsequently moved for a summary judgment under Rule 56, NDRCivP, and, except for the issue of damages claimed by the Fischers, the motion was granted and a partial summary judgment was ordered, but judgment was not entered at that time. There was a subsequent trial of the issue of damages as claimed by the Fischers, after which the court made its findings of fact, conclusions of law, and order for judgment. The judgment which was thereafter entered, and from which this appeal is taken, held that there was a validly exercised option and ordered the Fiebigers to convey the lands as required by the lease-option agreement. It also concluded that the Fischers were entitled to damages as follows:

"1. The sum of $12,000, which is one-half of the bonus paid to the Plaintiffs, Quinten Fiebiger and Elmo Fiebiger, by the Taurus Corporation for the oil and gas leases entered in January 1977, together with interest thereon at a rate of six percent (6%) per annum from and after January 6, 1977.

"2. The sum of $480.00, which is one-half of the delay rental for the calendar year 1978 from such oil and gas leases with the Taurus Corporation, together with interest thereon at a rate of six percent (6%) per annum from and after January 6, 1977.

"3. The sum of $960.00 which is one-half of the 1977 advance royalty paid under the coal lease, dated October 12, 1971, together with interest thereon at a rate of six percent (6%) per annum from and after October 12, 1977."

These conclusions necessarily involve factual determinations. Under Rule 52(a), NDRCivP, findings of fact shall not be set aside unless clearly erroneous. *Gajewski v. Bratcher*, 221 N.W.2d 614, 621 (N.D.1974). The Fiebigers do not argue that any of these findings are clearly erroneous; we therefore assume that the findings are correct and unobjectionable.

The trial court concluded, as a matter of law, inter alia, that:

(1) There was a valid lease and a valid option.

(2) The Fischers exercised the option.

(3) There is no genuine issue of fact regarding the adverse claims with respect to ownership and title.

(4) The Fischers are entitled to judgment as a matter of law to have the property conveyed by contract for deed as set forth in the lease and option.

(5) The Fischers are entitled, as a matter of law, to a contract for deed conveying 50% of all coal and coal rights under the

---

5. In the affidavit for publication and in a notice subjoined to the summons, it is stated that no personal claim is made against the defendants (§ 32–17–07, NDCC). No issue has been raised as to the effect of these statements and we make no determination thereon. See *Center State Bank, Inc. v. State Banking Board*, 276 N.W.2d 132 (N.D.1979).

property owned by the Fiebigers on March 31, 1977.

(6) The Fischers are entitled, as a matter of law, to a contract for deed conveying 50% of all oil, gas and other minerals, subject to any lease or transfer in effect on March 31, 1977.

Three out of the four issues which the Fiebigers described and argued involve a complaint that, prior to the trial court's ruling on the motion for summary judgment, they petitioned for a pretrial conference but none was held, as required by Rule 16, NDRCivP. They assert that this petition was disregarded by the trial court, as well as other motions, in ordering a partial summary judgment. Both counsel in this case were prolific in pursuing pretrial proceedings, most of which took place long after a note of issue was filed indicating that the matter was ready for trial. From the filing of defendants' answer until the issuance of the trial court's memorandum opinion and order on the motion for summary judgment, fifty-one separate and confusing docket entries relate to pretrial matters. The petition requesting a pretrial conference was not filed until two weeks after the motion for summary judgment.

Rule 16, NDRCivP, provides in part:

"In any action after issue is joined, the court in its discretion may, *and upon written request of a party shall,* direct the attorneys for the parties to appear before it for a conference in advance of trial . . . ." [Emphasis supplied.]

■ The emphasized language distinguishes the North Dakota rule from Rule 16 of the Federal Rules of Civil Procedure. Any construction applicable to the federal rule is not helpful here. The emphasized words were inserted in Rule 16, NDRCivP, in an attempt to incorporate the provisions of § 28–1103, North Dakota Revised Code of 1943. Section 28–1103, NDRC 1943, was enacted by the Legislative Assembly as § 3,

Ch. 216, S.L.1943, after a study by a Senate Interim Committee. Counsel has provided us with no background information and we have found no legislative history to aid us. The language of the mandate in Rule 16 is clear and thus is not subject to construction. In every case in which a pretrial conference is requested in writing, the court *shall* direct the attorneys to appear for the conference. There appears to be no exception for untimely petitions or for any other reason.

The mandatory language in Rule 16 has not previously been the subject of consideration by this court [6] and, hence, no substantive or procedural order by a trial court and no verdict or judgment have been reversed or set aside because of failure to conduct a pretrial conference.

The pretrial conference is generally accepted as an effective method to shorten and simplify litigation by eliminating uncontested issues and settling certain pretrial motions. In doubtful cases, the pretrial conference provides a vehicle for expedient, informal settlement. Its use is to be encouraged from the standpoint of saving time and expense to the litigants and valuable time and resources of the courts.[7]

■ Should the district court fail to conduct a pretrial conference and allegedly fail to consider other various motions made by the parties incident thereto, a remand is warranted only if substantial rights of the parties are affected adversely. Rule 61, NDRCivP. Our review of the record does not leave us with the impression that further consideration of the Fiebigers' claims by the district court would change the outcome. Failure of the district court to follow the letter of Rule 16, NDRCivP, is harmless error.

■ The Fiebigers further claim that certain affidavits filed by the Fischers in support of their motion for summary judgment do not meet the standards required by Rule 56(e), NDRCivP. See *Luithle v. Tav-*

6. For an interesting comment on mandatory language see *Dathe v. Wildrose School District No. 91,* 217 N.W.2d 781, 782 (N.D.1974), which found certain words "hortatory and precatory, but not mandatory."

7. See comments in 30 N.D.L.Rev. 85 (1954); 34 N.D.L.Rev. 32 (1958); and 39 N.D.L.Rev. 176 (1963).

*erna,* 214 N.W.2d 117, 124 (N.D.1974). Counsel's argument fails to note that this court, in *Luithle,* said that the erroneous admission or exclusion of an affidavit does not require the reversal of a summary judgment if the error is harmless. In view of the great volume of information made available to the trial court in the form of depositions which contained admissions by the Fiebigers, we hold that any error in failing to meet the criteria set forth in Rule 56(e), NDRCivP, is harmless under Rule 61, NDRCivP.

By the entry of a judgment all pending procedural motions are disposed of. We would not, in the absence of specific proof, assume that the trial judge did not consider them. The trial judge's memorandum opinion stated that the undisputed facts and admissions by the Fiebigers, when viewed in the light most favorable to them, disclosed clearly as a matter of law that (1) breaches, if any, were waived; (2) there was laches by the failure to act within reasonable time; (3) efforts to cancel lease and option were moot; (4) alleged waste was negligible; (5) improvements made without required consent resulted in benefits to the Fiebigers; (6) consideration was adequate as a matter of law in the absence of allegations of fraud, undue influence or unfair advantage; and (7) consideration is presumed per statute (§ 9–05–10, NDCC). See also § 31–11–03(38), NDCC.

Construction of a written contract to determine its legal effect is a question of law for the court. See *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978), and *Matter of Guardianship of Sorum,* 273 N.W.2d 710, 712 (N.D.1979).

This court has, at various times, said that while an action to determine adverse claims is of statutory form, its nature is essentially equitable. See *Neset v. Rudman,* 74 N.W.2d 826 (N.D.1956), and *Dixon v. Kaufman,* 79 N.D. 633, 58 N.W.2d 797 (1953). We have also said it is purely equitable. *Bolyea v. First Presbyterian Church of Wilton, N.D.,* 196 N.W.2d 149, 55 A.L.R.3d 1304 (N.D.1972).

Nothing prohibits one from raising issues such as rescission or cancellation of a contract, or forfeiture of rights under a contract in an action which prays for removal of a cloud and quieting title. See footnote 1, *supra.* However, if cancellation of an existing contract is involved, it must be shown that proceedings comply with the requirements of Chapter 32–18, NDCC, and the general contract law. Chapter 9–09, NDCC, governing extinction, rescission, alteration and cancellation also applies, and it becomes necessary to allege and prove unconscionable mistake, duress, menace, fraud, or undue influence. Chapter 9–03 and § 9–09–02, NDCC; *Schaff v. Kennelly,* 61 N.W.2d 538 (N.D.1953). See also Chapter 31–11, NDCC—Presumptions, Maxims and Estoppels. This court quoted with approval from 12 C.J.S. Cancellation of Instruments § 38, in *Daniel v. Hamilton,* 61 N.W.2d 281, 288 (N.D.1953):

"Where a party, with knowledge of facts entitled him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm. Indeed, it has been declared that since the remedy of rescission or cancellation is not held in high esteem by the courts even slight circumstances showing a purpose or intent to waive it will preclude the allowance of such relief."

Where an action sounds in contract, invocation of equity powers of court is inappropriate in absence of showing of unjust enrichment, fundamental unfairness, or miscarriage of law requiring intervention of equitable principles. See *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975). See also *MacMaster v. Onstad,* 86 N.W.2d 36, 43 (N.D.1957), where this court inferred that where a special and extraordinary remedy (such as reformation) is sought, facts must be set forth which entitle one to that remedy.

The Fiebigers argue that the consideration was insufficient to support the option. Apparently, the value of the property increased substantially after the option was negotiated. Ordinarily, the fairness of an option agreement is to be judged under the conditions which prevail at the time the option is given. *Petersen v. Olson,* 253 Iowa 469, 112 N.W.2d 874, 881 (1962); 91 C.J.S. Vendor and Purchaser § 6. In absence of overreaching or unconscionability, fluctuations in the market price after the option is entered into is a risk to be assumed by the parties. All contracts of purchase and sale are made in contemplation of future fluctuations in value. In the event there is a rise in market price, the purchaser reaps the benefit of the increase. *Petersen v. Olson,* 112 N.W.2d at 882, *supra.*

Here, the Fiebigers have not made any showing of unconscionability nor have they otherwise demonstrated that they were in an unequal bargaining position when the option was negotiated. They are not, therefore, entitled to the contractual remedies of cancellation, rescission, or reformation. A partial summary judgment was appropriate under the circumstances. Affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.