Paul E. TRAUGER, Maryann I. Trauger, Rose Ann Herrmann, Kenneth Trauger, Zella Trauger Zahn, Margaret Zinke, Calvin Trauger, and Mildred Archambeau, Plaintiffs and Appellants,

v.

HELM BROS., INC., a corporation, Defendant and Appellee.

Civ. No. 9530.

Supreme Court of North Dakota.

May 9, 1979.

Rehearing Denied June 18, 1979.

Steven L. Vogelpohl and Robert A. Birdzell, of Birdzell & Beauclair, Bismarck, for plaintiffs and appellants.

Malcolm H. Brown, of Bair, Brown & Kautzmann, Mandan, for defendant and appellee.

VANDE WALLE, Justice.

Paul E. Trauger, et al., plaintiffs ("the Traugers"), appeal from the district court's judgment dismissing an action to quiet title that they brought against Helm Bros., Inc. We affirm.

The Traugers own property located three miles west of Mandan, North Dakota. They received title to this property as heirs of the previous title holder, N. S. Trauger, upon his death in 1972. One hundred sixty-five acres of this property is subject to a sand, gravel, and rock lease ("lease") executed in 1954 by Luetta and N. S. Trauger, as lessors, and Helm Bros., through its representative, as lessee.

Since 1954, Helm Bros. has stripped the topsoil from various parts of the leased property to explore for and remove the underlying sand, gravel, and rock. Thus far, it has confined this activity to parts of the southern 100 acres of the leased property. Helm Bros. has opened three pits for the removal of the sand, gravel, and rock,[1] and, in the excavation of these pits, has piled the topsoil therefrom in spoilbanks. The pits have not been refilled and the area surrounding them has not been returned to its natural state. In the course of its operations, Helm Bros. on occasion has explored for sand, gravel, and rock in other parts of the southern 100 acres through the use of a bulldozer. Holes opened by the bulldozer have been refilled, but the topsoil from these areas has not been replaced. At one point during its operations, Helm Bros. flooded a wooded coulee located on the property in order to wash the sand and gravel moved from the pits. According to the Traugers, Helm Bros. has also covered or knocked down some of the fences on the property and has not replaced them. The Traugers state that Helm Bros. has never imparted to them notice of, or plans for, future activity.

Before Helm Bros. began its operation, the property was used primarily for agriculture,[2] but since the inception of the lease, the Traugers have continued to farm only the northern 65 acres. They have attempted to use the southern 100 acres as pasture for livestock, including cattle and horses. The three pits, however, endanger the livestock and aggravate fencing problems. In addition, Helm Bros.'s activity has removed so much vegetation in the southern 100 acres that it can sustain only a few horses and no "sizeable number of cattle."

Desiring now to void the lease, the Traugers instituted an action to quiet their title to this property. Their complaint, which named Helm Bros. as defendant, complied with the statutory form required by Section 32–17–04, N.D.C.C.

At the beginning of the trial in district court, the attorney for the Traugers filed a trial brief in which he enumerated three

---

1. Paul Trauger testified at trial that these pits extend from east to west, that the eastern pit, opened in 1956, is approximately 30 feet deep and four acres in surface area; that the center pit, opened in 1965 or 1966, is 25 feet deep and approximately two to three acres in surface area; and that the western pit, opened in 1965, is 50 feet deep and two acres in surface area.

2. Upon cross-examination at trial, however, Paul Trauger stated that prior to 1954 some gravel had been removed from the property.

theories upon which the Traugers would proceed: first, that the lease violated Section 47–16–02, N.D.C.C., because it was a lease of agricultural land extending for a longer period than ten years; second, that the lease violated Section 47–16–02, N.D. C.C., because it removed the property from agricultural use and thereby threatened or destroyed the long-term productivity of the property; and, third, that the lease was unconscionable.

Paul Trauger, the only witness testifying on behalf of himself and the other plaintiffs, described the facts set forth above and stated that he desires to irrigate and farm the 165 leased acres, but hesitates to do so lest Helm Bros.'s operations would interfere. After Paul Trauger's testimony, the Traugers rested. The attorney for Helm Bros. called no witnesses. He moved that the Traugers' complaint be dismissed pursuant to, we believe, Rule 41(b), N.D.R. Civ.P. The district court granted this motion and, in its findings of fact and conclusions of law, stated:

### "FINDINGS OF FACT

#### "I

"The plaintiffs are the owners of the following described real property located in Morton County, North Dakota:

The S½NW¼ and the NE¼ of Section 25, Township 139, Range 82, less Auditor's Lot D of the S½NE¼ of Section 25, Township 139, Range 82,

subject however, to a sand, gravel and rock lease dated November 29, 1954, between the plaintiffs' predecessors in title and the defendant's predecessors in title, providing for the defendant's exclusive right of mining, exploring and operating, for all sand, gravel and rock located on said S½NW¼ and the NE¼ of Section 25, T. 139, R. 82, as more fully set out in said sand, gravel and rock lease.

#### "II

"Pursuant to the terms of said sand, gravel and rock lease, the defendant has been producing sand, gravel and rock from said property from November of 1954, through today, and have been paying the plaintiffs as royalties therefor, the amount specified in said lease.

#### "III

"The plaintiffs have failed to prove that they have been damaged in any manner by the actions of the defendant for the removal of materials from said property, and have failed to prove that they have been damaged by reason of the withholding of any royalties properly due to the plaintiffs.

### "CONCLUSIONS OF LAW

#### "I

"The plaintiffs are the owners of the following described property located in Morton County, North Dakota:

The S½NW¼ and the NE¼ of Section 25, Township 139, Range 82, less Auditor's Lot D of the S½NE¼ of Section 25, Township 139, Range 82,

subject to all easements, leases, conveyances and mortgages of record as of the date of entry of judgment herein.

#### "II

"Said property as described above is further subject to the sand, gravel and rock lease dated November 29, 1954, and all of its terms and conditions as set forth in said lease, and said sand, gravel and rock lease is a valid lease between the plaintiffs and the defendant, subject to its terms and conditions."

The Traugers have appealed to this court the district court's dismissal of their action.[3] They raise two issues:

---

**3.** After the district court dismissed their action, the Traugers moved for a new trial pursuant to Rule 59, N.D.R.Civ.P., and for relief from the judgment pursuant to Rule 60, N.D.R.Civ.P.

The district court denied both of these motions, but the Traugers have not appealed the order denying these motions.

1. Whether the district court erred in finding and concluding that the lease was not a lease of "agricultural land reserving [a] rent or service . . . for a longer period than ten years . . ." [Sec. 47–16–02, N.D.C.C.], and

2. Whether the district court erred in failing to find and conclude that the lease was "oppressive, unfair, illegal or unconscionable."

I

To determine the Traugers' first issue it is necessary to consider Section 47–16–02, N.D.C.C., which the Traugers claim invalidates the lease. Section 47–16–02, N.D.C.C., provides:

"Limitations on leases.—No lease or grant of agricultural land reserving any rent or service of any kind for a longer period than ten years shall be valid. No lease or grant of any city lot reserving any rent or service of any kind for a longer period than ninety-nine years shall be valid."

The Traugers concede that this court construed Section 47–16–02, N.D.C.C., in *Berry-Iverson Co. of North Dakota, Inc. v. Johnson*, 242 N.W.2d 126 (N.D.1976). In *Berry-Iverson*, the successors in interest to the original lessors defended against an action for breach of the terms of a twenty-year lease by arguing that the lease was invalid as a violation of Section 47–16–02, N.D.C.C. This court rejected that argument:

"We believe that such contention of the Lockens is wholly without merit. The statutory prohibition restricts the lease of agricultural lands to a period of ten years. The land in the instant case, however, was not leased for agricultural purposes. Rather, the predecessors in interest to *Berry-Iverson* specifically leased the four-acre tract of land for use as a site for a radio transmitter tower and associated equipment, including the subsurface placement of a network of wires.

The evidence is uncontradicted that the use of the entire site for such purpose continues. The Supreme Court of South Dakota, in *Ryan v. Sioux Gun Club*, 68 S.D. 345, 2 N.W.2d 681 (1942), considered a statutory prohibition similar to the restriction placed upon a lease of agricultural land by § 47–16–02, N.D.C.C. and concluded that such prohibition did not apply to land leased for use as a gun club. After reviewing the historical interpretation placed upon similar provisions in other jurisdictions, the South Dakota Supreme Court concluded in *Ryan, supra* [,] 2 N.W.2d at 683:

'The lease with which we are here concerned expressly provides the purposes for which the property is leased, and by these express terms "agricultural purposes" are excluded. It might well be that under the evidence submitted the leased land was agricultural land, in the broad conception of that term, but this fact is not decisive. We believe the reasoning of the New York, Montana, and Michigan courts is sound, and that the statute should be constructed so as not to apply to leases of land even though suitable for agriculture, when leased for a purpose other than agriculture, and exclusive of the right of agriculture.' " [4] 242 N.W.2d at 131–132.

Trauger, however, attempts to distinguish the facts and conclusion in *Ryan* from those in this case. He points out, correctly, that the lease in this instance, unlike the lease in *Ryan*, does not contain a specific exclusion as to the use of the property for agricultural purposes. It is also true that the South Dakota Supreme Court in *Ryan* held that the South Dakota statute was not applicable to leases of land even though the land was suitable for agriculture "when leased for a purpose other than agriculture, and exclusive of the right to agriculture." Yet we do not understand that the provision excluding the right to use

**4.** The decision of the South Dakota court in *Ryan* includes an extensive discussion of the source of these statutes and the decisions construing similar statutes and constitutional provisions of other States.

the land for agriculture must be specifically stated in the lease. There is no indication that the lease in *Berry-Iverson* contained such a specific exclusion, but the trial court had found that the leased property was not intended to be used and never was used for agricultural purposes during the period of the lease.

In *Lerch v. Missoula Brick & Tile Co.*, 45 Mont. 314, 123 P. 25 (1912), cited by the South Dakota Supreme Court in *Ryan*, a lease for "clay, earth, and other material" for use by Missoula Brick & Tile Company in its business of "manufacturing brick, tile, etc.," was challenged under a statute substantially similar to that of both South Dakota and North Dakota. The Montana court noted that the parent State of this type of statute was New York and reviewed a series of decisions from the courts of New York construing that State's provision.[5] The Montana court then stated:

> "Again, it is contended that, in order that the lease be valid, there must be an express prohibition of use for agricultural purposes, and the *Massachusetts Bank Case* is cited as authority for the contention. If by this is meant that the lease must contain an express provision, in terms, that the lessee may not use the land for agricultural purposes, we cannot agree with counsel. If the terms of the lease disclose that the land may not be used for agricultural purposes by the lessee, and do not permit the use of the land by him for such purposes, we think it can be upheld as a valid lease by authority of both *Odell v. Durant, supra* [62 N.Y. 524], and *Massachusetts Nat. Bank v. Shinn, supra* [163 N.Y. 360, 57 N.E. 611]. In other words, if a fair interpretation of the lease as written discloses the fact that the right of the lessee to use the land was strictly limited to other than agricultural purposes, then the lease is not invalid. When a lease of land is made ostensibly for purposes other than agricultural and the land so leased cannot by the terms of the lease, either express or implied, be

put to agricultural uses by the lessee, the purpose of the statute has been satisfied, and the land in effect ceases to be agricultural land within the meaning of the law, although susceptible of use for agricultural purposes." 45 Mont. at 323–324, 123 P. at 27.

The Montana court, after examining the lease, concluded that it "amounted in effect to a sale of so much of the soil as might become necessary from time to time for the purpose of manufacturing brick and tile, and a lease of sufficient surface ground, within the limits described, to carry on its operations, and no more; and that the lessee is, partly by express agreement and partly by necessary implication, prohibited from using any portion of the ground for agricultural purposes." 45 Mont. at 325, 123 P. at 28. The court noted that California had amended its statute to read "no lease of land for agricultural purposes" instead of "no lease of agricultural land" and stated that it regarded the amendment as simply an attempt to more clearly define the original intent of the Legislature. We agree with the reasoning of the Montana court in its construction of the statute and turn to the lease here at issue to determine the nature of the lessee's use thereunder.

■ The Traugers urge that the lease as written cannot be construed as strictly limiting the use of the land to purposes other than agricultural purposes. Their contention is that by the language of the lease Helm Bros. has leased the land from them together with the exclusive right to remove sand, gravel, and rock. But, they argue, Helm Bros.'s use of the leased property is not strictly limited to the removal of sand, gravel, and rock and incidental use thereto; rather, the lease limits Helm Bros.'s use of the surface for other purposes only in the event that the Traugers are making use of, or renting, the surface and then only if the Traugers' purpose is other than the removal of sand, gravel, and rock. We do not so construe the lease.

---

5. This court also concluded that the North Dakota statute had its origin in the New York

Constitution. See *Wegner v. Lubenow*, 12 N.D. 95, 95 N.W. 442 (1903).

The rules of construction relating to contracts generally govern with reference to the construction of a lease. See, e. g., *Drees Farming Association v. Thompson,* 246 N.W.2d 883 (N.D.1976). The intention of the parties to a contract must be gathered from the entire instrument and not from isolated clauses. See, e. g., *Bjerken v. Ames Sand and Gravel Company,* 189 N.W.2d 366 (N.D.1971). This rule of construction has been applied to leases. See, e. g., *Bjerken v. Ames Sand and Gravel Company, supra; Anderson v. Blixt,* 72 N.W.2d 799 (N.D.1955).

In examining the lease we find that it is entitled "SAND, GRAVEL AND ROCK LEASE." The continuation of the lease beyond the initial term is conditioned upon the production of sand and gravel from the premises. Payment for the lease is measured by the production of sand and gravel. The lessors (Traugers) reserve the right to use or to rent the surface but such use does not affect the rights of the lessee "for mining and removing said sand, gravel and rock, together with the right of the Lessee to use and occupy so much of the surface [*sic*] of such lands as may be necessary for entry, dumps, buildings, tramways, railways, road beds, power lines, wells, or other uses in the *mining, removing, hauling and shipping of said sand, gravel and rock mined and removed thereon and therefrom.*" [Emphasis added.] The right of ingress, egress, and regress is limited to the purpose of "mining and removing said sand, gravel and rock with men, trucks, tools, machinery and supplies and all things necessary in the mining and removal of said sand, gravel and rock."

A reading of this entire lease leads us to only one conclusion—the lease is for the mining and removal of sand, gravel, and rock, and does not authorize Helm Bros. to use the leased property for other purposes, such as agricultural purposes. Furthermore, there is no evidence in the record that Helm Bros. has ever attempted to use the property for anything other than the mining and removal of sand, gravel, and rock and purposes incidental thereto, nor is there any evidence in the record that Helm Bros. has ever asserted any additional right to use the property for other purposes, such as agricultural purposes.

The Traugers also point out that in *Lerch v. Missoula Brick & Tile Co., supra,* and cases cited therein, the particular leases at issue contained provisions for restoration of the premises, but the lease herein considered contains no such provision. We do not find that the decisions in those cases were predicated upon restoration provisions in the leases. The Traugers further note that surface mining for sand, gravel, and stone is not governed by Chapter 38–14, N.D.C.C. [Reclamation of Surface-Mined Lands], or by Chapter 38–18, N.D.C.C. [Surface Owner Protection Act]. The fact that surface mining for sand, gravel, and rock is not governed by those Acts does not, however, affect the validity of the lease between the Traugers and Helm Bros. Many leases involving surface mining for various minerals or substances were executed before and after those Acts became effective, and the validity of those leases is not dependent upon provisions for restoration of the premises in the lease or legislation requiring such restoration. The Legislature deemed it necessary to enact certain statutes involving the surface mining of coal, and, in so doing, limited the application of those Acts to coal. Whether it is necessary for the Legislature to enact similar legislation for the surface mining of sand, gravel, and rock is a decision for the Legislature. See, e. g., *Olson v. Dillerud,* 226 N.W.2d 863 (N.D.1975).[6]

---

6. In *Olson v. Dillerud,* because of the possible consequences of inadequate restoration of the surface following strip-mining of coal, this court urged the Legislature to take whatever steps might be reasonably necessary to ensure that the surface was restored for agricultural and ranching purposes. An examination of Chapter 38–14, N.D.C.C. [Reclamation of Surface-Mined Lands Act], reveals that substantial changes were made by the Legislature in 1975 and 1977 and it is our understanding that further changes have been made by the 1979 Legislative Assembly. See, e. g., H.B. 1252, 46th Legis. Assembly.

We conclude that the lease does not violate the provisions of Section 47–16–02, N.D.C.C.

## II

The Traugers' second issue is that the district court erred in failing to find and conclude that the lease is of no effect on the equitable grounds that an oppressive, unfair, illegal, or unconscionable agreement will not be given effect. We agree with the Traugers that an action to quiet title as provided in Chapter 32–17, N.D.C.C., is an equitable action. See, e. g., *Fiebiger v. Fischer*, 276 N.W.2d 241 (N.D.1979). Helm Bros., however, urges that the complaint did not comport with Rule 8(a), N.D.R. Civ.P., in that it did not frame the issues between the parties. But Rule 81(a), N.D. R.Civ.P., provides that actions to quiet title and determine claims to real estate under Chapter 32–17, N.D.C.C., are excepted from the Rules of Civil Procedure insofar as they are inconsistent or in conflict with the procedure and practice provided in those rules. Section 32–17–04, N.D.C.C., sets forth the form of complaint in a quiet-title action and provides in part that the complaint "may be substantially in the following form, . . . ." Nevertheless, a pleading must be sufficient to inform and notify both the pleader's adversary and the court of the pleader's cause of action. See, e. g., *Adamsen Construction Company v. Altendorf*, 152 N.W.2d 576 (N.D.1967). The prayer for relief does not constitute part of the complaint or petition or statement of the cause of action or of the right to the relief prayed for. See, e. g., *In re Murray*, 145 N.W.2d 899 (N.D.1966). But the court may look to the prayer for relief as a means of clarifying the contentions of the parties and the issues raised, even though the prayer is not a part of the cause of action and would not control the relief in a contested case. See, e. g., *Rank v. Krug*, 90 F.Supp. 773 (S.D.Cal.1950). The pertinent parts of the complaint in this action, insofar as the issues before this court are concerned, are found in Paragraph III of the complaint. That paragraph and the prayer for relief state:

"III.

"That the defendant, substitute for the 1954 lessee of real property in said Section 25 hereinbefore described, claims certain estates or interests in or encumbrances upon said real property or portions thereof adverse to the plaintiffs burdening and damaging the plaintiffs in their use and enjoyment of and profit from said real property used and useable for farming and agriculture.

"Wherefore, plaintiffs pray:

"1. That the defendant be required to set forth all its adverse claims to the property above described, and that the validity, superiority, and priority thereof be determined.

"2. That the same be adjudged null and void, and that defendant be decreed to have no estate or interest in, or lien or encumbrance upon, said property, or any part thereof.

"3. That this title be quieted in plaintiffs as to such claims, and that defendant be forever barred and enjoined from further asserting the same.

"4. That plaintiffs have and recover possession of the premises described exclusive of and without interference from defendant.

"5. That plaintiffs have and recover of the defendant compensatory damages for all component materials of said property heretofore removed therefrom by defendant, less proper credit for amounts paid to and received by plaintiffs therefor, namely, Nine Thousand Five Hundred Dollars ($9,500.00).

"6. That plaintiffs have such other general relief as may be just, together with costs and disbursements."

At the trial of this matter the attorney for the plaintiffs submitted a brief, mentioned above, setting forth three "theories" upon which the plaintiffs should be entitled to relief. The first two of those theories concern Section 47–16–02, N.D.C.C., which we have already discussed. The third theory advanced was that equity courts have

recognized the principle that oppressive or unconscionable agreements will not be enforced.

After the introduction of testimony and evidence by the Traugers, counsel for Helm Bros. moved for dismissal on the grounds that the Traugers had introduced no evidence of the invalidity of the lease. The trial court granted the motion. Rule 41(b), N.D.R.Civ.P., provides, in part:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

The record on appeal to this court reveals considerable confusion on the part of the Traugers' counsel about whether the decision of the trial court disposed of his third "theory." [7] The Traugers raised the issue of reformation as well as cancellation of the lease before the trial court. The order of dismissal issued by the trial court from the bench and as contained in the transcript of the proceedings does not specify that the dismissal operates as anything other than an adjudication on the merits.

■ The trial court in correspondence with counsel for the Traugers indicated that the trial was held on the pleadings

involved, that there was no prayer for cancellation of the lease, and that no evidence was produced to show that the lease was unconscionable. We disagree with the trial court that the trial should have been limited to the pleadings and the prayer for relief. Under Rule 54(c), N.D.R.Civ.P., except for a default judgment, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." The prayer for relief is not a part of the cause of action. *In re Murray, supra.* It is apparent, however, that a complaint which succinctly alleged the facts upon which the Traugers based their cause of action would have more clearly delineated the issues the trial court was expected to determine. *Adamsen Construction Company v. Altendorf, supra.* Had the issues been more clearly defined in the pleadings rather than in the Traugers' brief to the trial court, the resulting confusion could have been avoided.

■ We do agree, however, with the trial court that there was insufficient evidence to show that the lease was unconscionable. We apparently are asked to conclude that the terms of the lease, of themselves, are unconscionable. In *Fiebiger, supra,* we considered an action brought to quiet title in which a lease with an option to purchase was at issue. We stated:

"Nothing prohibits one from raising issues such as rescission or cancellation of a contract, or forfeiture of rights under a contract in an action which prays for removal of a cloud and quieting title. See footnote 1, *supra.* However, if cancellation of an existing contract is involved, it must be shown that proceedings comply with the requirements of Chapter 32–18, NDCC, and the general contract law. Chapter 9–09, NDCC, governing extinction, rescission, alteration and cancellation also applies, and it becomes necessary to allege and prove unconscionable mistake, duress, menace, fraud, or undue

---

7. This is reflected by letters between the Traugers' counsel and the trial court, and a motion for new trial and motion for relief from judg-

ment by counsel, which were denied by the trial court.

influence. Chapter 9–03 and § 9–09–02, NDCC; *Schaff v. Kennelly*, 61 N.W.2d 538 (N.D.1953). See also Chapter 31–11, NDCC—Presumptions, Maxims and Estoppels. This court quoted with approval from 12 C.J.S. Cancellation of Instruments § 38, in *Daniel v. Hamilton*, 61 N.W.2d 281, 288 (N.D.1953):

'Where a party, with knowledge of facts [entitling] him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm. Indeed, it has been declared that since the remedy of rescission or cancellation is not held in high esteem by the courts even slight circumstances showing a purpose or intent to waive it will preclude the allowance of such relief.'

"Where an action sounds in contract, invocation of equity powers of court is inappropriate in absence of showing of unjust enrichment, fundamental unfairness, or miscarriage of law requiring intervention of equitable principles. See *Cargill, Inc. v. Kavanaugh*, 228 N.W.2d 133 (N.D.1975). See also *MacMaster v. Onstad*, 86 N.W.2d 36, 43 (N.D.1957), where this court inferred that where a special and extraordinary remedy (such as reformation) is sought, facts must be set forth which entitle one to that remedy.

"The Fiebigers argue that the consideration was insufficient to support the option. Apparently, the value of the property increased substantially after the option was negotiated. Ordinarily, the fairness of an option agreement is to be judged under the conditions which prevail at the time the option is given. *Petersen v. Olson*, 253 Iowa 469, 112 N.W.2d 874, 881 (1962); 91 C.J.S. Vendor and Purchaser § 6. In absence of overreaching or unconscionability, fluctuations in the market price after the option is entered into is a risk to be assumed by the parties. All contracts of purchase and sale are made in contemplation of future fluctuations in value. In the event there is a rise in market price, the purchaser reaps the benefit of the increase. *Petersen v. Olson*, 112 N.W.2d at 882, *supra*.

"Here, the Fiebigers have not made any showing of unconscionability nor have they otherwise demonstrated that they were in an unequal bargaining position when the option was negotiated. They are not, therefore, entitled to the contractual remedies of cancellation, rescission, or reformation. A partial summary judgment was appropriate under the circumstances." 276 N.W.2d at 246–247.

In this instance we do not have a lease with an option to buy. A motion to dismiss under Rule 41(b), N.D.R.Civ.P., was granted instead of a partial summary judgment. Nevertheless, we believe the rationale of *Fiebiger* is applicable.

The trial court, in accordance with Rule 41(b), N.D.R.Civ.P., made findings as provided in Rule 52(a), N.D.R.Civ.P. Under Rule 52(a), findings of fact shall not be set aside unless clearly erroneous. Based on the record before us, we cannot conclude that the findings of the trial court are clearly erroneous.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.