[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 456 
A large part of the manorial lands in this state were originally settled under leases in fee, leases for lives, or a long term of years. In other words the proprietors, instead of *Page 457 
selling their lands out and out to purchasers, demised them to tenants for long periods of time, reserving an annual rent, in money, produce or services. Experience proved that this mode of settling the country was prejudicial to the prosperity and interests of the state, as a question of political economy. The proprietors owning the lands, and the tenants having only the usufructuary interest, subject to be lost by forfeiture, by a nonperformance of any of the conditions of the lease, the latter felt none of the pride of independent ownership, and no desire to improve, by the best mode of cultivation, an inheritance which was liable to pass from them or their descendants without a compensation. Impressed with the conviction of this truth, the framers of the constitution of 1846, by a provision in the fundamental law, abrogated these tenures, and provided by the 14th section of the 1st article, "that no lease or grant of agricultural "land for a longer period than twelve years, thereafter made, in "which should be reserved any rent or service of any kind, "should be valid."
The question involved in this cause is, whether the agreement between the parties to this suit, and bearing date the 26th day of November, 1847, is a lease or grant falling within the prohibition contained in this clause of the constitution. The instrument in question was intended to embrace several distinct objects, and is very unskillfully and inartificially drawn. It commences by declaring that Mary Stephens does hereby "lease, "sell and convey to the said Samuel Reynolds, for and during "the natural life of the said Mary, the whole and entire use and "benefit of all the real estate of the said Mary, c. and also the "use of the personal property and estate of the said Mary, except "such of the said personal property as she shall dispose of, "to have and to hold the same and the use thereof during the "life of the said Mary Stephens." Then follows a covenant on the part of the said Mary, that she will by her last will and testament, devise to the said Hannah and her heirs in fee forever, all that lot or parcel of land, (describing it,) which the plaintiff seeks in this action to recover. The agreement then proceeds *Page 458 
with a covenant on the part of the said Samuel Reynolds, expressed to be in consideration of the said agreement, and of one dollar to him in hand paid, to remove on to the said land above mentioned, and that during the natural life of the said Mary, he will comfortably and decently support and provide for, and take care of the said Mary, and that in case of the sickness of the said Mary, she shall be well and faithfully taken care of and attended by a physician and other necessary attendants, and that the said Hannah, the wife of said Samuel and daughter of said Mary, shall take care of said Mary and treat her kindly, and as becomes the relation of parent and child. The leases or grants of land prohibited by the constitution were such as were held by the tenants upon a reservation of an annual or periodical rent, or service, to be paid as a compensation for the use of the lands, in contradistinction from a consideration paid for the estate granted. It is still competent to make a grant for life or lives upon a given consideration to be paid for the estate. This consideration may be payable all at once, or by installments, or in services, so that it be not by way of rent. By the constitution there must be a reservation of rent or service. A reservation is defined to be, a keeping aside, or providing, as where a man lets or parts with his land, but reserves or provides himself a rent out of it, for his own livelihood. (Jacob's LawDict. tit. Rent.) And a rent is said to be a sum of money or other consideration, issuing yearly out of lands or tenements. (Plowden, 132, 138, 141.) Blackstone defines rent or reditus,
as a compensation or return, it being in the nature of an acknowledgment given for the possession of some corporeal inheritance. And it is defined to be a yearly profit, issuing out of lands. It must be a profit; but it is not necessary that it should be in money; for spurs, capons, horses, corn and other matters are frequently rendered for rent. This profit must becertain, or capable of being reduced to a certainty. It must also issue yearly. (2 Bl. Com. 41; Jacob's Law Dic. tit.Rent.) Now the consideration agreed to be rendered for the use of the lands in question, though it was to consist in services, cannot be characterized as rent, or service rendered, *Page 459 
within the meaning of the constitution. It was a continuingconsideration and not rent. It was payable, not entirely for the use of the lands; but in part it was in consideration of the appellant's agreement to devise the inheritance to the defendants, and in part for the use of the personal estate. Again, the agreement to take care of the appellant and treat her kindly as becomes the relation of parent and child, is certainly not in the nature of rent. The covenant might be broken by unkind and unfilial treatment, notwithstanding a supply for all her physical wants were provided. If rent, it could either be distrained for, or recovered by action. In this case no distress would lie for want of certainty, and great difficulty would exist in recovering for a breach of the defendant's covenant by way ofrent. It is difficult to put a value, in dollars and cents, upon the kindness and affection due from a daughter to a mother; and it is impossible to say how large a portion of the services were intended as a compensation for the use of the piece of land in suit; and how much for the appellant's agreement to devise the inheritance. We are therefore of the opinion that this agreement is not within either the letter or the spirit of the constitutional prohibition. The services were not reserved asrent, but were to be in consideration for the conveyance of the estate, and for the executory agreement of the appellant to devise the farm. It was from its very nature a continuingconsideration, and perhaps for the nonperformance of the conditions — by neglecting to take proper care of the appellant, or by unkind and unfilial treatment — she might sustain an action to recover back the land; but upon this point we do not intend to express an opinion.
It is apparent from the written instrument, that it was one in which the interests of the respondent were more cared for, than those of the appellant. But if entered into with a full knowledge of all its provisions, and without the use of any undue influence, we do not see as the appellant has any remedy. The judgment must therefore be affirmed. *Page 460