RYAN, et al, Appellants, v. SIOUX GUN CLUB, Respondent
(2 N. W.2d 681.)

(File No. 8472.   Opinion filed February 28, 1942.)

**O. C. Donley,** of Elk Point, for Plaintiffs and Appellants.

**Stilwill, Brackney & Stilwill,** of Sioux City, Iowa, and **Bielski, Elliott & McQuillen,** of Sioux Falls, for Defendants and Respondents.

RUDOLPH, P. J.   In this action plaintiffs seek to have a lease of certain real property in Union County declared invalid and of no effect.   The defendant, Sioux Gun Club, has acquired by assignment the rights of the lessee named in the lease.   The plaintiffs and defendant, Adolphus Bruneau, who refused to join as party plaintiff, have succeeded to the rights of the lessor.   Plaintiffs seek to have the lease declared of no effect upon two principal grounds:   First, that the lease comes within the prohibition contained in SDC 38.0403, which provides:   "No lease or grant of agricultural land for a longer period than ten years, in which shall be reserved any rent or service of any kind, shall be valid." Second, that certain conditions of the lease have been violated, the violation of which, it is contended, voids the lease.

The material facts are without dispute and are as follows:   The leased property consisted of an irregular tract of land located on the shore of McCook Lake in Union County and contained approximately eighteen acres.   The lease was made in February, 1929, and the period covered thereby was twenty years from that date with the option in the lessee of extending the lease for another ten year period.   At the time the lease was made, the property was used principally

as a pasture for a few cattle and sheep. It was overgrown with a growth of small timber such as dogwood and sumac. A part of the eighteen acres adjacent to the lake was what is known as accretion land. Years prior to 1929 there had been some attempt to clear the land and cultivate it, but for a large number of years preceding 1929 there had been no attempt at cultivation. The lease contains the express provision that the property was leased "for Club purpose, recreational and social purposes, and not as and for agricultural purposes." Soon after the execution of the lease the Sioux Gun Club went into possession of the property, cleared off the underbrush and growth and improved the property to make it suitable for the purposes of a gun club. A club house was erected, buildings were erected for trap and skeet shooting and several other smaller buildings were built. Roads through the property were laid out and improved, a water supply provided, and certain drainage installed, at a cost of approximately $11,000. On the lake shore the land was platted into small tracts and leased to members of the Sioux Gun Club who erected houses on these small tracts. The lease contained the further provision that: "No summer cottages shall be erected on said tract for leasing to the public, other than club members, employees, or caretakers, and said lands shall not be leased or subleased for any unlawful purpose." There are nine cottages on the lake front. Several of these cottages are built in such a manner that they may be occupied the entire year, that is, the cottages have basements and furnaces, are so constructed that they are subject to occupation during the winter months, and on occasions these dwellings are in fact occupied by club members the year around. A few years after the occupation of the premises by the Sioux Gun Club, a part of the land was sown to alfalfa and, since that time, the alfalfa as it matured has been cut and some of it sold. With respect to this alfalfa the trial court found as follows: "In providing for its shooting traps several acres of the ground so in use for shooting purposes were sown to alfalfa in order to keep the ground under proper subjection, and to provide a base for the fall of targets as thrown from said traps. The

defendant kept the said alfalfa cut, and on occasions sold the hay, but the proceeds have never exceeded the cost of preparation and care of said ground or resulted in profit to the defendant, and such use of the ground was a mere incident to the lease and the uses and purposes contemplated thereby." Prior to the sowing of this alfalfa, defendant permitted sheep to be pastured on the grounds. It is apparent from the record that the pasturing of these sheep was simply for the purpose of aiding in the clearing of the ground and preparation of the premises for the purposes for which they were leased. Since the clearing of the land by defendant, it is suitable for cultivation with the possible exception of the accretion land, and so far as the soil is concerned, it is similar to surrounding cultivated land.

Our statute SDC 38.0403 undoubtedly found its source in New York, which had a constitutional provision dating back to the Constitution of 1846, and identical in language except that the period fixed is twelve years instead of ten. New York has had occasion to consider this constitutional provision and its historical background in a number of cases. Stephens v. Reynolds, 6 N. Y. 454; Parsell v. Stryker, 41 N. Y. 480; Odell v. Durant, 62 N. Y. 524; Massachusetts Nat. Bank v. Shinn, 163 N. Y. 360, 57 N. E. 611, 613. Speaking with reference to the historical reasons which prompted the constitutional provision, the New York court in the case of Stephens v. Reynolds, supra, decided in 1852, said: "A large part of the manorial lands in this state were originally settled under leases in fee, leases for lives, or a long term of years. In other words the proprietors, instead of selling their lands out and out to purchasers, demised them to tenants for long periods of time, reserving an annual rent, in money, produce or services. Experience proved that this mode of settling the country was prejudicial to the prosperity and interests of the state, as a question of political economy. The proprietors owning the lands, and the tenants having only the usufructuary interest, subject to be lost by forfeiture, by a non-performance of any of the conditions of the lease, the latter felt none of the pride of independent ownership, and no desire to improve, by the best mode of

cultivation, an inheritance which was liable to pass from them or their descendants without a compensation. Impressed with the conviction of this truth, the framers of the constitution of 1846, by a provision in the fundamental law, abrogated these tenures, and provided by the 14th section of the 1st article, 'that no lease or grant of agricultural land for a longer period than twelve years, thereafter made, in which should be reserved any rent or service of any kind, should be valid.' "

In the case of Massachusetts Nat. Bank v. Shinn, supra, the New York court stated its conclusion in a concise paragraph, as follows: "The evil aimed at by the constitution is long leases of farming lands for farming purposes, not the leasing of part of a suburban farm for the erection of dwelling houses, stores, or manufactories, or of a mine in the bowels of the earth, with the right to bring ore to the surface and ship it."

Montana has an identical statute. In Lerch v. Missoula Brick & Tile Co., 45 Mont. 314, 123 P. 25, 27, Ann. Cas. 1914A, 346, the Montana Court, in a well reasoned opinion, reviewed at length the New York cases in construing the statute of that state. The conclusion of the Montana court is stated, as follows: "When a lease of land is made ostensibly for purposes other than agricultural and the land so leased cannot by the terms of the lease, either express or implied, be put to agricultural uses by the lessee, the purpose of the statute has been satisfied, and the land in effect ceases to be agricultural land within the meaning of the law, although susceptible of use for agricultural purposes."

Michigan had a constitutional provision similar to that of New York, and in construing this provision the Michigan court said in the case of De Grasse v. Verona Mining Co., 185 Mich. 514, 152 N. W. 242, 250: "The purpose of the constitutional provision in question was to announce the policy of the state of Michigan, in line with the policy of the state of New York, that long leases of agricultural lands, for agricultural purposes, were detrimental to the interests of agriculture, because the tenants had 'no desire to improve

by the best mode of cultivation, an inheritance which was liable to pass from them or their descendants without compensation,' and a study of the New York cases will disclose the position of the New York courts to be that a lease of lands suitable for agriculture for a longer period than 12 years, for any purpose other than agriculture, and exclusive of the right of agriculture, is valid."

▆▆ The lease with which we are here concerned expressly provides the purposes for which the property is leased, and by these express terms "agricultural purposes" are excluded. It might well be that under the evidence submitted the leased land was agricultural land, in the broad conception of that term, but this fact is not decisive. We believe the reasoning of the New York, Montana, and Michigan courts is sound, and that the statute should be construed so as not to apply to leases of land even though suitable for agriculture, when leased for a purpose other than agriculture, and exclusive of the right of agriculture.

▆ The plaintiffs-appellants further contend that the evidence discloses that the leased premises were in fact used for agricultural purposes. We cannot concur. It is clear from the record that the growing of the alfalfa was not for any agricultural purpose, but for the purpose of properly maintaining the premises for the purpose for which they were leased. The trial court so found and the evidence amply sustains the finding.

▆ It is further contended that the subleasing of the small tracts of land on the lake shore to club members and the erection by the members of dwellings on these small tracts constitute a violation of the terms of the lease. The lease itself contemplates subleasing parts of the tract to club members wherein it provides that, "No summer cottages shall be erected on said tract for leasing to the public, other than club members, employees, or caretakers." By the use of the term "summer cottages" in this provision of the lease no exact limitation was placed upon the type of construction of the houses which might be constructed upon the premises. The evidence discloses that only club·members were permit-

ted the privilege of subleasing and constructing dwellings on the lake front, and there is no showing that the construction and use of these dwellings were for other than the purposes contemplated by the lease.

The record discloses that the findings of fact and conclusions of law were presented to the trial judge who endorsed thereon the following: "Filed April 21st, 1941, John T. Medin, Judge." Thereafter the court signed the judgment. The papers were then sent to the Clerk of Courts of Union County, who placed his filing stamp thereon as of April 23rd, 1941.

The above facts constitute a compliance with SDC 33.1403 when this section is read in conjunction with that part of SDC 33.0802, which provides: "The filing of pleadings and other papers shall be made by filing them with the clerk of the Court, except that the Judge may permit the papers to be filed with him, in which event he shall note thereon such filing and the date thereof and forthwith transmit them to the office of the clerk of the Court."

The judgment appealed from is affirmed.

All the Judges concur.