#27451-a-LSW

**2016 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

In the Matter of the Estate of
EDWARD F. BICKEL, Deceased.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
CORSON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WARREN G. JOHNSON
Retired Judge

\* \* \* \*

MITCHELL A. PETERSON
ELIZABETH S. HERTZ of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota             Attorneys for appellant
                                            Gail Bickel.

JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise,
  Sauck & Hieb, LLP
Aberdeen, South Dakota             Attorneys for appellee
                                            Edward J. Bickel.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 11, 2016

OPINION FILED **03/30/16**

#27451

WILBUR, Justice

[¶1.] In this seven-year estate dispute, testator's daughter appeals the circuit court's decision denying her relief from an order under SDCL 15-6-60(b). The daughter also asserts the circuit court erred when it considered extrinsic evidence to interpret the testator's Last Will and Testament and subsequent Codicil, approved the personal representative's proposed distribution of testator's assets, reformed the Will and Codicil, and awarded attorney's fees to testator's grandson. We affirm.

## Background

[¶2.] Edward F. Bickel was born in 1925, and grew up on his family's farm and ranch until he left to join the military. After his service, Edward F. returned to the family farm and worked with his father and brother until they split the farm. After the split, Edward F. began to operate his own farm and ranch near Isabel, South Dakota. He married Nadine and had two children, Edward P. and Gail. Nadine and Edward F. divorced in 1972, and Edward F. never remarried. Edward P. and Gail continued to live and work on the ranch while growing up. As adults, neither Edward P. nor Gail remained on the ranch or maintained an active role in the day-to-day ranch operations.

[¶3.] Edward P.'s son, Edward J. (Eddy), was close to his grandfather, Edward F. Eddy described the relationship to be akin to one between a father and son. During high school and college, Eddy spent the summer months helping Edward F. operate the ranch. After Eddy graduated college in 2005, he returned to the ranch to work with his grandfather full time. A few years later, Eddy and his

-1-

wife Megan wanted assurances from Edward F. that a long-term plan would exist for Eddy's involvement in the ranch. And Edward F. wanted the ranch to remain in the Bickel name. Edward F. and Eddy had ongoing discussions about Eddy's continued involvement.

[¶4.] In 2008, Edward F.'s health began to deteriorate. He ranched less and less. At the time, Edward F. did not have a written will. He contacted attorney Andrew Aberle to assist in planning his estate. According to Aberle, Edward F. wanted the ranch to remain in the Bickel name and wanted Eddy to take over its operation. Between June 2008 and November 2009, Edward F. had Aberle execute multiple estate planning documents.

[¶5.] In June 2008, Edward F. executed a Will giving land to Edward P. unrestricted, land to Gail in trust, and land to Eddy unrestricted. Edward F. provided Aberle the legal descriptions for the land by memory. The Will nominated Eddy as personal representative. In July 2008, Edward F. gave Eddy and Megan a quarter section of real property by warranty deed. In August 2008, Edward F. executed a Codicil to his June 2008 Will. The handwritten Codicil directed that Eddy could rent one of Edward F.'s tractors. It further provided that Edward F.'s "investments and personal property" be used to pay inheritance tax, with any remaining funds to be split equally among his three granddaughters. In September 2008, Edward F. purchased a hay rake for $19,240. Eddy used the rake on the farm.

[¶6.] In November 2008, Edward F.'s health continued to deteriorate. He was admitted to an assisted living facility. That same month he executed a power

of attorney giving Eddy authority to deposit and withdraw money from an account at Western Dakota Bank. In December 2008, Edward F. purchased a hay baler for use on the farm at a cost of $21,000. Also in December 2008, Edward F. executed a second Codicil to his 2008 Will. The Codicil provided that all oil, gas, and mineral rights to his property be distributed one-quarter to Edward P., one-quarter to Gail, and the remaining one-half to his grandchildren. The Codicil restricted the sale of land distributed to Edward P. Edward F. amended the Codicil again, but never signed the amended Codicil.

[¶7.]     In January 2009, Edward F. executed a third Codicil to his 2008 Will. The Codicil amended the distribution of the oil, gas, and mineral rights to be distributed to his great-grandchildren after the death of Edward P., Gail, and all Edward F.'s grandchildren. In June 2009, Edward F. moved into a nursing home. He named Eddy as primary beneficiary of a JP Morgan account and Gail's daughter, Anne-Marie, as contingent beneficiary. Also in June 2009, Edward F. gave Eddy and Megan a quarter section of real property by warranty deed.

[¶8.]     In September 2009, Eddy met with Attorney Aberle without Edward F. Edward F. was in hospice care. Eddy shared with Aberle notes from Edward F. related to Edward F.'s estate. During the meeting, Aberle called Edward F. to discuss Edward F.'s wishes. After the meeting and phone calls, Aberle prepared two codicils to the 2008 Will. Eddy took the first Codicil to Edward F. personally. The Codicil erroneously gave Eddy "artifacts" instead of "hay" and listed Edward P. as Edward F.'s "grandson." Aberle faxed a second, corrected version to Edward F. Also in September 2009, Edward F. executed a bill of sale for household items and

personal property, a bill of sale for a rifle, a handwritten letter gifting his "tame and wild hay" to Eddy, a bill of sale giving Eddy his "tame and wild hay," and an institutional health care power of attorney appointing Eddy his health care attorney in fact.

[¶9.]     In September 2009, Aberle realized that Edward F. signed the wrong codicil from September 14, 2009. Aberle contacted Eddy to arrange for Edward F. to update the estate documents. On September 22, 2009, Edward F. executed a new Last Will and Testament and Codicil. It incorporated the previous will and codicils. The new Will appointed Eddy to serve as personal representative. The Will gave land to Edward P. unrestricted, land to Gail in trust, land to Eddy unrestricted, and $40,000 in trust to Anne-Marie for college on the condition that she complete college in five years. The Will provided that "the rest and remainder" of Edward F.'s assets be distributed to Gail and Edward P. equally, with Eddy having the right "to lease, buy or sell" property held in trust for Gail "and other property handled as personal representative." Under the Will, Eddy had "the option to lease all land devised to Gail Bickel" for $1,600 per 160 acres ($10/acre) per year. The Codicil Edward F. gave Eddy the recently-purchased rake and baler. Rapid City attorney, John Burke, and two members of his staff witnessed Edward F.'s execution of the Will and Codicil. Burke asked Edward F. questions about his children and his property. He also observed Edward F. read portions of the Will.

[¶10.]     On October 7, 2009, Edward F. executed another Codicil to the Will. The Codicil purported to "delete and remove" land given to Gail in trust. In fact, the Codicil deleted and removed land not owned by Edward F. The Codicil amended

the provision in the Will giving $40,000 in trust for Anne-Marie's college education to include, in trust for Anne-Marie, a devise of the land deleted and removed from Gail's trust (the land Edward F. does not own). The Codicil provided Eddy with the right to "lease, buy or sell" Edward F.'s "assets in both the Gail Bickel Trust and the Annie Bickel Trust, . . . including to himself, at any reasonable price as determined in his sole discretion at either public or private sale without the necessity of notice and without court approval or authorization." The Codicil further amended the Will provision that gave the remainder of Edward F.'s assets to Edward P. and Gail equally to instead give "the rest and remainder" of Edward F.'s assets to his "grandchildren equally[.]"

[¶11.]　　　On November 4, 2009, Edward F. died in hospice care. On November 13, 2009, Eddy petitioned the circuit court to adjudicate testacy, determine heirs, and appoint him personal representative. Eddy sought to have the September Will and October Codicil admitted to formal probate. He served notice of the petition and hearing, scheduled for December 14, 2009, on the heirs of Edward F.'s estate. On December 9, 2009, Edward P. and Gail served an objection to Eddy's petition. They asserted that Edward F. lacked testamentary capacity, and that the Will and Codicil were the products of undue influence, fraud, duress, and/or mistake. No other heir responded to or made an appearance on Eddy's petition or Edward P. and Gail's objections.

[¶12.]　　　The parties postponed the hearing on Eddy's petition and stipulated to the appointment of a personal representative other than Eddy. On January 27, 2010, the court appointed Eric Bogue as personal representative of the Estate of

Edward F. Bickel. The court scheduled a trial on Edward P. and Gail's objections for February 9-11, 2011. The other heirs did not receive notice of the trial date. Edward P. and Gail moved for a continuance, which the court granted. The other heirs did not receive notice of the continued trial date. The court held a trial on Eddy's petition and Edward P. and Gail's objections on June 14-17, 2011.

[¶13.] In August 2011, the court issued findings of fact and conclusions of law overruling Edward P. and Gail's objection that the Will and Codicil were the products of Eddy's undue influence. The court held that Edward F. did not lack testamentary capacity and entered an order admitting Edward F.'s Will and Codicil to probate. Gail appealed. This Court dismissed Gail's appeal because she failed to serve notice of the appeal on all the heirs. *See, e.g.*, *In re Estate of Geier*, 2012 S.D. 2, ¶ 23, 809 N.W.2d 355, 361 ("Under SDCL 15-26A-4(3), notice of appeal must be served on the heirs" and the failure to do so "is jurisdictionally fatal[.]").

[¶14.] On August 22, 2012, Gail moved the circuit court for relief from the court's August 2011 order under SDCL 15-6-60(b). She alleged that the court's order and judgment were void for Eddy's failure to serve notice of the trial on all heirs as required under SDCL 29A-1-401 and SDCL 29A-3-403. On October 1, 2012, the circuit court issued findings of fact and conclusions of law denying Gail relief from the August 2011 order.

[¶15.] Over the next two years, the parties litigated the probate of Edward F.'s estate and distribution of his assets. Edward P. and Gail objected to personal representative Bogue's September 2012 proposed final distribution. They asserted that Bogue failed to properly account for property rights and property passing

under the Will and Codicil. Specifically, they challenged the proposed distribution of the SE 1/4 of S2-T18N-R23 (SE 1/4) to Anne-Marie in trust because the Will devised that quarter section to Gail in trust. Bogue had proposed distributing the SE 1/4 to Anne-Marie in trust because he believed Edward F. intended that quarter section be devised to Anne-Marie. He relied on Edward F.'s Codicil, which devised the <u>SW</u> 1/4 of S2-T18N-R23 (SW 1/4) to Anne-Marie in trust. Edward F. did not own the SW 1/4. In Bogue's view, therefore, Edward F. intended the Codicil to read the SE 1/4, not SW 1/4.

[¶16.] Edward P. and Gail also challenged the proposed distribution of the NE 1/4 of S7-<u>T19N</u>-R24 to Eddy because neither the Will nor Codicil made a provision for the distribution of that property. Rather, the Will distributed the NE 1/4 of S7-<u>T20N</u>-R24 to Eddy. Edward F. does not own the NE 1/4 of S7-<u>T20N</u>-R24. In response, Eddy argued that, Edward F. intended to give him the NE 1/4 of S7-<u>T19N</u>-R24 rather than the NE 1/4 of S7-<u>T20N</u>-R24.

[¶17.] The circuit court held a hearing in December 2012, and, in April 2013, issued findings of fact and conclusions of law. It concluded that the Will and Codicil were ambiguous. It ruled that Edward F. intended to distribute the SE 1/4 to Anne-Marie in trust and the NE 1/4 of S7-T19N-R24 to Eddy. The court further concluded that Edward F. intended that Eddy have the right to lease land devised to Anne-Marie and Gail in trust. It ordered that Eddy pay the Corson County FSA lease rate from the date of Edward F.'s death until April 5 2013, and $1,600 per 160 acres thereafter.

[¶18.]      Bogue submitted a proposed final distribution consistent with the circuit court's order. He also moved for reimbursement of expenses and for compensation. Eddy, Edward P., and Gail filed objections. From April 2013 to April 2015, the parties continued to litigate the distribution of Edward F.'s assets. Relevant to this appeal are Edward P. and Gail's objections to the past and future rental rate and duration of the lease of Gail's land held in trust, and Gail's request for reimbursement for the loss in property value due to the deterioration of certain assets bequeathed to her. After multiple hearings, the court ruled that Eddy had the right to lease the land held in trust for Gail at a rate of $10 per acre on an annual basis. The court ordered that Eddy could offset future rent payments with the amounts he overpaid from the time of Edward F.'s death until the court's January 5, 2015 order. The court denied Gail's request for reimbursement for the deteriorated condition of certain household items bequeathed to her and denied her request to inspect the shop building to determine whether it contained household items bequeathed to her.

[¶19.]      During the probate of Edward F.'s estate, Eddy had moved the circuit court for reimbursement of his necessary expenses including attorney's fees under SDCL 29A-3-720. He asserted that between December 2009 and July 2012, he incurred expenses "in defending the proceeding instituted by Edward P. Bickel and Gail Bickel objecting to the probate of the Last Will and Testament of Edward F. Bickel and the Codicils thereto." Edward P. did not object as long as any amount awarded to Eddy would be paid out of the estate's residuary. Gail objected and asserted that Eddy's actions did not result in a substantial benefit to the estate.

[¶20.]     The court held a hearing on August 27, 2012, and issued findings of fact and conclusions of law on October 1, 2012. The court overruled Gail's objections. It concluded that "in order to effectuate Edward F. Bickel's testamentary intent," Eddy "successfully defended against allegations that the Will and Codicil were invalid." The court noted that, had Edward P. and Gail succeeded, Edward F.'s "property would have been divided equally between Edward P. Bickel and Gail Bickel pursuant to SDCL 29A-2-103." The court ruled that "Edward J. Bickel's [(Eddy's)] actions benefitted the estate and he is entitled to reimbursement for his necessary expenses and disbursements, including reasonable attorney's fees." On August 15, 2014, Eddy again moved the circuit court for reimbursement of necessary expenses and disbursements including reasonable attorney's fees. After a hearing, the court entered an order granting Eddy's motion on October 29, 2014.

[¶21.]     Gail appeals and asserts the following issues for our review:

1.     Whether the circuit court erred when it denied Gail's motion for relief from judgment under SDCL 15-6-60(b).

2.     Whether the circuit court erred when it interpreted Edward F.'s Will and Codicil and ordered the distribution of real estate from Gail's trust to Anne-Marie's trust and the distribution of real estate to Eddy rather than through the residual estate.

3.     Whether the circuit court erred when it interpreted Edward F.'s Will and Codicil to permit Eddy to lease Gail's trust land at $10 per acre for a limitless duration and to offset future rent payments on past overpaid rent.

4.     Whether the circuit court abused its discretion when it denied Gail's motion for reimbursement due to waste and Gail's motion to inspect the shop building.

5. Whether the circuit court erred when it granted Eddy's motion for reimbursement of attorney's fees.

## Analysis

### 1. Motion for Relief under SDCL 15-6-60(b)

[¶22.] Gail requests that this Court review the circuit court's decision to deny her relief from the August 2011 order under the de novo standard of review. She relies on the statement in *Rabo Agrifinance, Inc. v. Rock Creek Farms*, that a Rule 60(b) motion made on undisputed facts is decided as a matter of law and reviewed de novo. *See* 2013 S.D. 64, ¶ 12, 836 N.W.2d 631, 636. Here, the question Gail raised via her Rule 60(b) motion is purely legal: Does Eddy's failure to serve notice of the June 2011 trial upon all heirs void the August 2011 order as against Gail who did receive notice?

[¶23.] Gail directs this Court to *Estate of Geier*, where we held that a failure to serve notice of an appeal on all heirs is jurisdictionally fatal. 2012 S.D. 2, ¶ 23, 809 N.W.2d at 361. Gail also relies on *Lett v. Weaver* for the proposition that the requirement to serve notice on all heirs is not optional or waivable and that the failure to do so voids the order or judgment. *See* 79 So. 3d 625 (Ala. Civ. App. 2010).

[¶24.] In *Estate of Geier*, we were asked to decide whether the failure to serve notice of *an appeal* on all heirs deprived this Court of jurisdiction to consider the appeal. 2012 S.D. 2, ¶¶ 17-23, 809 N.W.2d at 360-61. We examined SDCL 29A-1-401 and accompanying Uniform Probate Code provisions to identify the parties entitled to notice of the appeal. We held that, under SDCL 29A-1-401(a), "the other heirs are parties to the proceeding involving Leo's petition for supervised

administration and removal of the personal representative."[1]  *Id.* ¶ 21.  And, under

SDCL 15-26A-4(3), notice of appeal is required to be served on "each party."  *Id.*

¶ 22.

[¶25.]        Here, Eddy served notice on all heirs of the December 2009 hearing

regarding his petition for adjudication of testacy, determination of heirs, and

appointment of personal representative.  This he was required to do under SDCL

29A-1-401(a) and SDCL 29A-3-403.  However, the court did not hold a hearing in

2009—it adjudicated testacy in a June 2011 trial.  And we know that Eddy did not

serve notice of the June 2011 trial on all interested parties as required under SDCL

29A-1-401(a), SDCL 29A-3-403, SDCL 29A-1-304, and SDCL 15-6-5(a).[2]  However,

---

1.      Under SDCL 29A-1-401(a),

> If notice of a hearing on any petition is required and except for
> specific notice requirements as otherwise provided, the
> petitioner shall cause notice of the time and place of hearing of
> any petition, together with a copy of the petition, to be given to
> any interested person or the person's attorney if the person has
> appeared by attorney or requested that notice be sent to an
> attorney.

2.      SDCL 29A-3-403(a) provides in part that "[u]pon commencement of a formal
testacy proceeding, the court shall fix a time and place of hearing.  Notice
shall be given by the petitioner in the manner prescribed by § 29A-1-401 to
the persons specified in this section[.]"

SDCL 29A-1-304 provides that "[u]nless specifically provided to the contrary
in this code or unless inconsistent with its provisions, the rules of civil
procedure, including the rules concerning vacation of orders and appellate
review, govern formal proceedings under this code."

SDCL 15-6-5(a) provides in part that "[e]xcept as otherwise provided in this
chapter, every order required by its terms to be served, every pleading
subsequent to the original complaint unless the court otherwise orders
because of numerous defendants, every written motion other than one which

(continued . . .)

-11-

Eddy's failure to serve notice on all heirs of the June 2011 trial does not implicate the same statute as in *Estate of Geier* governing appeals. *See* 2012 S.D. 2, ¶ 22, 809 N.W.2d at 361 (citing to SDCL 15-26A-4(3)). Eddy's petition does implicate SDCL 29A-3-105.[3] Under that statute, the circuit court, in spite of lack of notice to all heirs, may consider Eddy's petition as against those given "notice in conformity with § 29A-1-401." More importantly, under SDCL 29A-3-105, "[p]ersons notified are bound though less than all interested persons may have been given notice." *Id.* Gail does not dispute that she received notice of the June 2011 trial.

[¶26.] *Lett* is also distinguishable. In *Lett*, two heirs sought to void the probate court's final settlement because they did not receive notice of the final settlement hearing. 79 So. 3d at 627-28. The heirs had received notice of the initial hearing date, but no notice of subsequent hearing dates. Factually, *Lett* appears similar to Eddy's failure to serve notice on all heirs of the June 2011 trial. Yet, in *Lett*, a specific statute controlled the required notice for a *final settlement hearing*. Absent statutory compliance, the court in *Lett* could not proceed. *Id.* at 628. Here, however, SDCL 29A-3-105 specifically provides that Gail—a person notified—is bound. The circuit court did not err when it denied Gail relief under SDCL 15-6-60(b).

_____

(. . . continued)
   may be heard ex parte, and every written notice, appearance, demand, offer or judgment, and similar paper shall be served upon each of the parties."

3.   SDCL 29A-3-105 provides in part that "[t]he court may hear and determine formal proceedings and distribution of decedents' estates after notice in conformity with § 29A-1-401. Persons notified are bound though less than all interested persons may have been given notice."

### 2. Interpretation of the Will and Codicil

### a. Extrinsic Evidence

[¶27.]     Gail asserts that the Will and Codicil are clear and unambiguous, despite that the Will and Codicil devised land not owned by Edward F.  In Gail's view, the fact Edward F. devised land not owned by him did not give the circuit court authority to consider extrinsic evidence to alter the disposition of the estate.  Eddy, on the other hand, claims that the erroneous legal descriptions were mere scrivener's errors, justifying the consideration of extrinsic evidence to determine Edward F.'s testamentary intent.

[¶28.]     We review a circuit court's interpretation of a will de novo.  *In re Estate of Brownlee*, 2002 S.D. 142, ¶ 13, 654 N.W.2d 206, 210.  The goal in will interpretation is to determine the testator's intent, and we determine the intent from the language used.  *In re Estate of Seefeldt*, 2006 S.D. 74, ¶ 8, 720 N.W.2d 647, 649.  If, from the language used, the intent is clear, that intent controls.  *Id.*  Yet, if the language is ambiguous and doubt exists as to the testator's intent, we consider extrinsic evidence and examine the circumstances surrounding the execution of the writing.  *Id.* (quoting *Estate of Brownlee*, 2002 S.D. 142, ¶ 16, 654 N.W.2d at 210).  "An ambiguity is not of itself created simply because the parties differ as to the interpretation of the will."  *In re Estate of Klauzer*, 2000 S.D. 7, ¶ 10, 604 N.W.2d 474, 477 (quoting *In re Estate of Jetter*, 1997 S.D. 125, ¶ 20, 570 N.W.2d 26, 31).  An ambiguity exists when the language used "is reasonably capable of being understood in more than one sense."  *Id.*  We limit our examination to what the testator meant by what he said, not what we think he meant to say.  *Id.* ¶ 9.  "All

the words and provisions appearing in a will must be given effect as far as possible, and none should be cast aside as meaningless." *Estate of Jetter*, 1997 S.D. 125, ¶ 20, 570 N.W.2d at 31 (quoting *In re Estate of Bock*, 85 S.D. 113, 115, 177 N.W.2d 734, 735 (1970)).

[¶29.]     The words used by Edward F. in the Will and Codicil create doubt as to Edward F.'s intent.  The Will unambiguously devised the SE 1/4 to Gail in trust. The Codicil unambiguously removed the SW 1/4 purportedly devised to Gail in trust and specifically devised that same quarter section of land to Anne-Marie in trust. This reflects Edward F.'s intent to remove land devised to Gail under the Will and instead give that land to Anne-Marie.  But Edward F. does not own the SW 1/4 described in the Codicil.  Thus, the Codicil does not remove land from Gail's devise or give land to Anne-Marie that was devised to Gail in the Will.  To ignore Edward F.'s intent to remove land devised to Gail and devise that same land to Anne-Marie would go against the requirement that "all words and provisions in a will should be given effect 'and none should be cast aside as meaningless.'" *See Estate of Seefeldt*, 2006 S.D. 74, ¶ 16, 720 N.W.2d at 653 (quoting *Estate of Jetter*, 1997 S.D. 125, ¶ 20, 570 N.W.2d at 31).

[¶30.]     The same lack of clarity exists in the Will provision devising land to Eddy.  Yes, the language of the devise in isolation is unambiguous.  Edward F. devised the NE 1/4 of S7-T20N-R24 to Eddy.  But from the language of the Will and Codicil together, it appears Edward F. intended to specifically devise all his real property and that no real property would pass to his heirs via the residual clause.

Neither the Will nor Codicil account for the NE 1/4 of S7-T19N-R24, which makes ambiguous the provision devising Eddy land Edward F. does not own.

[¶31.] Gail, however, insists extrinsic evidence cannot be considered to "ascribe to a testator an intention that his will does not express." She directs this Court to *In re Kahoutek's Estate*, for the proposition that a testator's devise of land not owned by the testator does *not* warrant the consideration of extrinsic evidence. 166 N.W. 816 (N.D. 1918). In that case, the testator devised to his wife land not owned by him. On appeal to the North Dakota Supreme Court, wife argued that testator intended wife receive the land testator did own even though the testator devised that land to his son. The court held that extrinsic evidence could not be considered to "justify the court in taking an equivalent amount from a [devise] which is definitely made to another, and in saying that the fact that the former property was not owned by the testator justifies the conclusion that he intended that his valid and definite [devises] should be set aside." *Id.* at 819.

[¶32.] Here, unlike in *Kahoutek's Estate*, Edward F. did not devise to anyone the NE 1/4 of S7-T19N-R24. As the court in *Kahoutek's Estate* remarked, that fact is important when it appears on the face of the instrument that the testator intended to devise all his property. *Id.* (citing *Patch v. White*, 117 U.S. 210, 6 S. Ct. 617, 29 L. Ed. 860 (1886)). Also, the context of the Will and Codicil together indicate that Edward F. intended to *remove* land devised to Gail and devise *that same land* to Anne-Marie. *See In re Hoisington's Estate*, 67 S.D. 280, 291 N.W. 921 (1940) (extrinsic evidence is appropriate when there is uncertainty upon the face of the instrument). Because there is uncertainty from the context of the Will and

Codicil and upon the face of the Will and Codicil, the circuit court did not err when it considered extrinsic evidence to determine Edward F.'s testamentary intent.

### b. Judicial Estoppel

[¶33.] Gail next avers that Eddy cannot now claim the Will and Codicil contain errors because he previously argued that the Will and Codicil were valid. She also asserts that the circuit court judicially accepted Eddy's argument when it entered its order admitting the documents into probate. She submits that, if Eddy "wanted this property disposed of in a manner inconsistent with the Testamentary Documents, he should have raised the matter at trial, rather than waiting for the proposed distribution to make his arguments."

[¶34.] This Court has stated:

> Judicial estoppel cannot be reduced to an equation, but courts will generally consider the following elements in deciding whether to apply the doctrine: the later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

*Watertown Concrete Prods., Inc. v. Foster*, 2001 S.D. 79, ¶ 12, 630 N.W.2d 108, 112-13 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1814-15, 149 L. Ed. 2d 968, 977 (2001)). At the hearing on Gail's objection to Eddy's petition for adjudication of testacy, determination of heirs, and appointment of personal representative, Eddy did not assert that the Will and Codicil were error free. Nor did the circuit court declare that the Will and Codicil were error free. On the contrary, the circuit court recognized the error, noting, "It remains unclear whether

this error was attributable to Edward F. or merely a scrivener's error on the part of

Aberle that went uncorrected." From our review, judicial estoppel does not apply.

### c. Distribution of the SE 1/4 of S2-T18N-R23

[¶35.]    Through paragraph VI, the Will devised to Eddy "in trust" for Gail,

"the rest of [Edward F.'s] land in Township 18 North, Range 23[.]"  This includes

the SE 1/4 of S2-T18N-R23.  The Codicil, through paragraph I, provided:

> I hereby delete and remove from paragraph VI of my Last Will
> and Testament dated September 22, 2009, SW 1/4 of Section 2
> and NW 1/4 of Section 11 both in Township 18 North, Range 23
> E.B.H.M., Corson County, South Dakota.

The Codicil also amended paragraph VIII of the Will to give Eddy, in trust for Anne-

Marie, the "SW 1/4 of Section 2 and NW 1/4 of Section 11 both in Township 18

North, Range 23 E.B.H.M., Corson County, South Dakota."

[¶36.]    It is clear from the language of the Will and Codicil that Edward F.

intended to remove specific property devised to Gail in trust and instead give and

devise that same property to Anne-Marie in trust.  It is further evident from the

record, including testimony from the June 2011 trial, that Edward F. wanted to give

two quarters of land to Anne-Marie instead of Gail.  Edward F.'s intent would be

frustrated if the Codicil were not reformed to give and devise the SE 1/4 of S2-

T18N-R23 to Anne-Marie in trust instead of the SW 1/4 of S2-T18N-R23.

### d. Distribution of the NE 1/4 of S7-T19N-R24

[¶37.]    In his Will, Edward F. devised the NE 1/4 of S7-T20N-R24 to Eddy

unrestricted.  Edward F. did not own real property in the NE 1/4 of S7-T20N-R24.

Rather, Edward F. owned real property in the NE 1/4 of S7-T19N-R24.  Neither the

Will nor Codicil specifically devised the NE 1/4 of S7-T19N-R24.  According to Gail,

there is no ambiguity under the terms of the Will and Codicil—Edward F. did not specifically devise the NE 1/4 of S7-T19N-R24—and, thus, it must pass to the residual estate.

[¶38.] Although the erroneous legal description is certain and unambiguous, we cannot conclude the same for Edward F.'s intent under the language of the Will and Codicil. This is because the Will and Codicil purport to specifically devise all Edward F.'s real property to identifiable heirs. And the testimony from the June 2011 trial supports that Edward F. intended to devise *all* his real property. Attorney Aberle explained that Edward F. provided the legal descriptions by memory. Edward F. could have recited T20N when he intended T19N or Aberle could have written T20N when Edward F. said T19N. Also, Aberle testified that Edward F. wanted Eddy to get everything "up north." Edward F.'s property up north includes the quarter section in T19N, not the quarter section in T20N. Because the circumstances surrounding the execution of the Will support that Edward F. intended to devise the NE 1/4 of S7-T19N-R24 rather than the NE 1/4 of S7-T20N-R24 to Eddy unrestricted, the circuit court did not err when it reformed the Will.

### 3. Rental Rate, Lease Duration, and Rent Offset
#### a. Rental Rate

[¶39.] Under paragraph IX of the Will, Eddy "has the option to lease all land devised to Gail Bickel at the sum of One Thousand Six Hundred Dollars ($1,600.00) per one hundred and sixty acres (160) per year[.]" The Codicil did not amend paragraph IX of the Will. But it amended paragraph XIII. In the Will, paragraph

XIII gave Eddy the authority "to lease, buy or sell any property hereinabove given and devised to him as trustee for Gail Bickel and other property handled as personal representative." The Codicil amended paragraph XIII to provide,

> I further authorize my grandson, Edward J. Bickel to lease, buy or sell any and all of my assets in both the Gail Bickel Trust and Annie Bickel Trust as well as in this paragraph of my First Codicil, including to himself, at any reasonable price as determined in his sole discretion at either public or private sale without the necessity of notice and without court approval or authorization.

Gail argued to the circuit court that the "reasonable price" amendment to paragraph XIII overrode the $10/acre rate in paragraph IX. The circuit court disagreed and ruled that Edward F. intended that Eddy have the right to lease the property held in trust for Gail and Anne-Marie at a rate of $10/acre.

[¶40.] From our review of the Will and Codicil, the circuit court did not err. Prior to its amendment, paragraph XIII provided Eddy general authority to lease, buy, or sell Edward F.'s assets. Paragraph IX, on the other hand, gave Eddy a specific option to lease Gail's property held in trust for a specific rate. The amendment to paragraph XIII via the Codicil did not alter Eddy's specific option under paragraph IX of the Will to lease the property held in trust for Gail and Anne-Marie at a rate of $10/acre.

### b. Lease Duration

[¶41.] Gail asserts that the lease provision in the Will violates SDCL 43-32-2 because it gives Eddy the right to lease agricultural land for more than twenty years. She further contends that because the lease provision does not contain a specific duration, we must presume that the lease is for one year under SDCL 43-

32-3. The circuit court noted that it "does not find that the situation created by the estate plan is a perpetual 'lease[.]'" It held that Eddy "has the right, on a year-to-year basis and pursuant to the terms of the Will and Codicil, to lease the property contained in the Gail Bickel Trust at the $10.00 per acre rental rate set forth in the Will."

[¶42.]     The Will provides Eddy with "the option to lease all land devised to Gail Bickel at the sum of One Thousand Six Hundred Dollars ($1,600.00) per one hundred and sixty acres (160) per year[.]"  Under SDCL 43-32-2, "[n]o lease or grant of agricultural land for a longer period than twenty years, *in which shall be reserved any rent or service of any kind*, shall be valid."  (Emphasis added.)  In *Commercial Trust & Savings Bank v. Christensen*, we held invalid a lease and addendum that extended beyond twenty years.  535 N.W.2d 853 (S.D. 1995).  The lease and addendum in *Commercial Trust*, however, reserved rent and affirmatively set a duration beyond twenty years.

[¶43.]     In *Ryan v. Sioux Gun Club*, we examined the historical reasons that prompted the predecessor to SDCL 43-32-2.  68 S.D. 345, 348, 2 N.W.2d 681, 682 (1942).  We recognized that our statutory language came from the New York Constitution of 1846.  *Id.*  Quoting a New York case, we reasoned that the purpose of the statute is to prohibit owners from "reserving an annual rent, in money, produce or services" instead of selling their lands outright.  *Id.*  This is because

> [a] large part of the manorial lands in this state were originally settled under leases in fee, leases for lives, or a long term of years.  In other words the proprietors, instead of selling their lands out and out to purchasers, demised them to tenants for long periods of time, reserving an annual rent, in money, produce or services.  Experience proved that this mode of

> settling the country was prejudicial to the prosperity and interests of the state, as a question of political economy. The proprietors owning the lands, and the tenants having only the usufructuary interest, subject to be lost by forfeiture, by a non–performance of any of the conditions of the lease, the latter felt none of the pride of independent ownership, and no desire to improve, by the best mode of cultivation, an inheritance which was liable to pass from them or their descendants without a compensation.

*Id.* (quoting *Stephens v. Reynolds*, 6 N.Y. 454 (N.Y. 1852)).

[¶44.] Here, although Eddy's option to lease extends beyond twenty years, the lease provision does not reserve any rent or service of any kind. Edward F. did not lease his land. He conveyed it outright to a trust without any obligation that he be paid rent. Because Eddy's option to lease land held in trust for Gail is not a "lease or grant of agricultural land for a longer period than twenty years, in which shall be reserved any rent or service of any kind," the option does not violate SDCL 43-32-2. The circuit court did not err when it did not declare Eddy's right to lease Gail's land held in trust void as a matter of law.

[¶45.] Similarly, the circuit court did not err when it held that SDCL 43-32-3 did not apply. Under that statute, "[a] hiring of real property, other than lodgings in places where there is no usage on the subject, is presumed to be for one year from its commencement *unless otherwise expressed* in the hiring." *Id.* (emphasis added). Here, the lease provision *otherwise expresses* that Eddy has the option to lease the land held in trust for Gail "per year."

### c. Rent Offset

[¶46.] From the date of Edward F.'s death until the circuit court's January 2015 order, Eddy paid Gail the FSA lease rate. Eddy sought reimbursement for

amounts overpaid after the circuit court interpreted the Will and Codicil to set a lease rate of $10/acre. The court held that Eddy was entitled to reimbursement, and ordered Eddy to offset future rent payments on his amounts overpaid. Gail does not specifically challenge the court's order that Eddy offset his future rent payments. Rather, she reiterates her previous issue that the circuit court erred when it concluded that the $10/acre lease rate in the Will applies. Because we previously held that the circuit court did not err when it ruled that the $10/acre lease rate applies, Gail's claim that we "should reverse the circuit court's decision and remand for further proceedings to establish the 'reasonable price' lease rate" is moot.

### 4. Reimbursement for Waste to Household Items and Request to Inspect the Shop Building

[¶47.] Edward F. gave and bequeathed his household items to Edward P. and Gail. When Gail received the freezer and washing machine, they were not functional. According to Gail, "[e]lectricity had been disconnected from Edward's home, yet meat and perishable items were left in the freezer for years. Due to lack of electricity and heat in the home, pipes froze and the washing machine is no longer functional." Gail requested that the court order the estate to reimburse or compensate her for loss of value to these two items. Gail also asked the court for authority to inspect Edward F.'s shop to determine if certain household items had been relocated there. According to Gail, she was unable to locate many of Edward F.'s household items and her own property within Edward F.'s home. The court denied both Gail's request for reimbursement and request to inspect the shop.

[¶48.]     From our review, the court did not abuse its discretion. Gail presented no evidence that prior to Edward F.'s death the washer and freezer were functioning. She also did not present evidence that waste caused the washer and freezer to reduce in value. The record also supports the court's decision to deny Gail access to the shop. Beyond her mere assertion that the shop may contain household items, there is no evidence to warrant disturbing the court's decision.

### 5.     Reimbursement of Eddy's Attorney's Fees

[¶49.]     Under SDCL 29A-3-720, the person nominated as personal representative may recover necessary expenses and disbursements from the estate including reasonable attorney's fees for defending any proceeding in good faith. The statute also provides that a court may "award necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an action that resulted in a substantial benefit to the estate." *Id.* According to Gail, the circuit court abused its discretion when it found that Eddy's efforts resulted in a substantial benefit to the estate. She avers that "Eddy's litigation activity certainly benefited himself" and "resulted in him getting more land, but such efforts did not benefit the estate."

[¶50.]     "Attorney's fees are awarded at the discretion of the circuit court[,]" which decision we will not disturb absent an abuse of discretion. *Wagner v. Brownlee*, 2006 S.D. 38, ¶ 17, 713 N.W.2d 592, 598. Edward F. appointed Eddy as personal representative. Eddy accepted the appointment and acted as personal representative from November 2009 to January 2010. On January 26, 2010, the parties stipulated to the appointment of Eric Bogue as personal representative. In

Eddy's August 2012 request for reimbursement, he sought fees incurred between December 2009 and July 2012. Gail objected, and after a hearing, the court awarded Eddy the full amount. The court ruled that Eddy's activity in defending Edward P. and Gail's objections substantially benefited the estate. The court found that, "[i]n this instance, in order to effectuate Edward F. Bickel's testamentary intent, Edward J. Bickel successfully defended against allegations that the Will and the Codicil were invalid." The court also concluded that, "[h]ad Edward P. Bickel and Gail Bickel succeeded in their attacks, all of Edward F. Bickel's property would have been divided equally between Edward P. Bickel and Gail Bickel pursuant to SDCL 29A-2-103." The court awarded Eddy additional expenses and attorney's fees in response to Eddy's amended motion for reimbursement made on August 15, 2014.

[¶51.]　　　"SDCL 29A-3-720 permits an award of beneficiary's attorney's fees when the services resulted 'in a substantial benefit to the estate.'" *Estate of Seefeldt*, 2006 S.D. 74, ¶ 22, 720 N.W.2d at 654-55 (quoting *Wagner*, 2006 S.D. 38, ¶¶ 14-15, 713 N.W.2d at 597). We find no abuse of discretion in the court's decision to award Eddy attorney's fees and necessary expenses incurred in his effort to defend against Edward F. and Gail's objections to the validity of the Will and Codicil. In *In re Estate of Laue*, we recognized that an estate "is benefited when genuine controversies as to the validity or construction of a will are litigated and finally determined[.]" 2010 S.D. 80, ¶ 43, 790 N.W.2d 765, 774 (citing *In re Estate of Torgersen*, 711 N.W.2d 545, 555 (Minn. Ct. App. 2006); *In re Estate of Flaherty*, 484 N.W.2d 515, 518 (N.D. 1992)).

[¶52.]    On January 27, 2010, the parties stipulated to the appointment of Eric Bogue as personal representative. At that point, it is not as clear whether Eddy incurred expenses and attorney's fees primarily to protect his interests as a beneficiary under the Will and Codicil or in an effort to substantially benefit the estate. *See Wagner*, 2006 S.D. 38, ¶ 19, 713 N.W.2d at 598. The record reveals that even after Bogue's appointment, Eddy continued to defend the validity of the Will and Codicil. In fact, Bogue did not retain counsel to represent the estate in the June 2011 trial. So Eddy's successful efforts in defending the validity of the Will and Codicil resulted in a substantial benefit to the estate. The court did not abuse its discretion when it awarded Eddy attorney's fees and expenses related to those efforts.

[¶53.]    After the June 2011 trial, Gail appealed the circuit court's August 2011 order to this Court. Although we dismissed the appeal, Gail continued to challenge the circuit court's decision. She filed a motion for relief from the court's August 2011 order under SDCL 15-6-60(b) asking that the circuit court vacate its order because Eddy did not serve notice of the June 2011 trial upon all heirs. Gail's motion required Eddy to continue to defend the validity of the Will and Codicil, and the court did not abuse its discretion when it awarded Eddy expenses and attorney's fees related to those efforts.

[¶54.]    In August 2014, Eddy moved the circuit court for a second and amended award of attorney's fees and expenses. He indicated that he mistakenly excluded certain expenses from his 2012 request and requested reimbursement for those expenses. He also requested reimbursement for his attorney's fees and

expenses incurred after August 2012. There is no objection in the record by Gail to Eddy's motion. The record reveals that the court held a telephonic hearing. But we do not have a transcript of this hearing. In the court's order following the hearing, the court noted that all "parties agree that this Motion aligns with the [c]ourt's order dated October 1, 2012, on this subject and have no further objections at this time." Without a written objection or a transcript of the hearing, there is nothing for us to review. It is possible Eddy's attorney's fees and expenses incurred after August 2012, were in an effort to protect his interests as a beneficiary. This is because after August 2012, the litigation centered on, among other things, whether Edward F. intended Eddy to receive land outright, whether Edward F. intended land to be given in trust to Gail or Anne-Marie (but held in trust for Eddy's use), and lease terms and rental rates related to land leased by Eddy. The litigation also involved Gail's and Eddy's objections to Bogue's distribution of the estate's assets and proposed final accountings. Because there is no record that Gail objected to Eddy's August 2014 motion for attorney's fees and expenses, Gail waived the issue for our review on appeal. *See Strong v. Gant*, 2014 S.D. 8, ¶ 24, 843 N.W.2d 357, 363 ("her failure to object to the court's ultimate decision to award the Intervenors attorney's fees and expenses results in her waiver of these claims on appeal").

## Appellate Attorney's Fees

[¶55.] Eddy moved this Court for appellate attorney's fees in the amount of $5,435 and attached an itemized statement of costs incurred and legal services rendered as required by SDCL 15-26A-87.3. An award of appellate attorney's fees is authorized under SDCL 15-26A-87.3 if otherwise allowable. Eddy contends that an

award of appellate attorney's fees is authorized because an award of fees is otherwise allowable under SDCL 29A-3-720. Eddy's appeal related in part to Gail's attack on the validity of Edward F.'s Will and Testament and subsequent Codicil. We, therefore, grant Eddy attorney's fees of $2,000.

[¶56.] Affirmed.

[¶57.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.